So also, 855 F.2d 783.

Richard MARX, individually and as father and next friend of Kristina Marx, a Minor, Plaintiffs,

v.

Glenn H. GUMBINNER, Robert Timmann, Kelly Vaughn, Bruce H. Colton, and Pamela J. Roebuck, Defendants.

No. 86–8403–CIV–EPS.

United States District Court, S.D. Florida.

May 19, 1989.

William G. Hutul and Richard J. Troy, Chicago, Ill., for plaintiffs.

J. David Bogenschutz, Fort Lauderdale, Fla., James W. Reilley, Des Plaines, Ill., and James Littman, Stuart, Fla., for defendants.

## MEMORANDUM OPINION

### ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Defendants', GLENN GUMBINNER, ROBERT TIMMANN and KELLY VAUGHN, Motion for Summary Judgment. Defendants move this Court for summary judgment on three grounds: 1) that probable cause existed for the arrest of Richard Marx; 2) that Defendants are entitled to qualified immunity from damages for an alleged wrongful arrest; and 3) that there is no evidence establishing the existence of a conspiracy to wrongfully arrest and prosecute Plaintiff.

## I. STANDARD OF REVIEW

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories on file, together with the affidavits show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(a), Federal Rules of Civil Procedure. Defendants must show "that there are no genuine issues of material fact pertinent to those questions of law." *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir.1988). The undisputed facts must be resolved in the light most favorable to the non-movant. *Goddard v. Urrea*, 847 F.2d 765, 767 (11th Cir.1988). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

The three issues before this Court are 1) whether there was probable cause to arrest Richard Marx; 2) whether Defendants are entitled to a qualified immunity defense, even if probable cause did not exist; and 3)

whether Plaintiff's allegations support a cause of action for conspiracy. Additionally, this Court will address the issue raised by Plaintiff concerning his claim for injunctive relief.

## II. FACTS

Sometime during the early morning hours of February 8, 1986, four-year old Kristina Marx was abducted from the home of Claire Leonard (now Claire Marx), where Kristina and her father, Richard Marx, were staying with Claire and Claire's four-year old daughter, Julia. Richard Marx had won custody of Kristina after his divorce from Kristina's mother.

Richard Marx and Claire were sleeping on the floor of the living room at the time of the abduction. There was no sign of any forcible entry into the house. Kristina was apparently taken from the house to a wooded area behind the house, where she was brutally raped. Richard Marx was awakened by crying and arose to find Kristina, in her nightgown, covered with blood and mud, standing outside on the patio in front of the screen door. He asked her what happened and Kristina replied, "Daddy, you left me outside."

Richard Marx brought Kristina into the bathroom and attempted to clean her of mud and blood. He did not clean around her vaginal area. Claire immediately called the Sheriff's Office and for an ambulance. A Deputy Sheriff and the paramedics responded to the call. The paramedics gave Kristina first aid and transported her, along with Richard Marx, to the hospital.

Investigators from the Sheriff's Office discovered a calculator, a business card, a lady's wrist watch and a child's underpants in a muddy, ravine-like area approximately 50 yards from the patio door. Claire Leonard told the detective that the retrieved items were from the bedroom where Kristina had been sleeping. The Sheriff's Office brought in a K–9 dog who located the crime site, but the dog was unable to conclusively follow a scent beyond the confines of the crime scene and the house.

At the hospital, Kristina was taken into the emergency room. After first being prepped by the nurses, Dr. Crouch examined Kristina and performed a rape kit on Kristina to be forwarded to the crime lab for analysis. Dr. Crouch told Detective Timmann that Kristina told him on one occasion that "Daddy did this to me," and on a second occasion, "Daddy left me outside to sleep outside in my nightgown, and he did this to me." These statements were made in the presence of the two assisting registered nurses, and were subsequently repeated to Detective Captain Gumbinner, who arrived at the hospital shortly after the arrival of Detective Timmann and interviewed both the doctor and the two nurses.

At the completion of the examination, Detective Marcum was permitted to enter the examination room to prepare photographs of the victim for evidentiary purposes. Detective Marcum conducted a brief interview of Kristina while taking the photos. During that interview, Kristina told Detective Marcum, "a bad man did this to me." The two nurses were also present at that statement. None of the other law enforcement officers at the hospital interviewed Kristina directly.

At the hospital, another nurse, Ann Allen (now Ann Sarno), approached Detective Gumbinner and informed him that she was a friend of Richard Marx and Kristina. Ann Allen went into Kristina's room and subsequently told Detective Gumbinner that Kristina had told her, "a bad man took me outside." One of the nurses was also present and testified that Kristina said, "a bad man hurt me." Ann Allen also told Detective Gumbinner that she had known Richard Marx to have had financial problems, that Richard Marx drank, and that he went to topless bars.

Richard Marx was taken by Detective Timmann to the Sheriff's Office to be questioned. Upon arrival at the Department, he was given his Miranda warnings, and a taped statement from Mr. Marx was taken. Among other things, Richard Marx told Detective Gumbinner that he was usually a very light sleeper. Although an intruder could have entered the bedroom area of the home without entering the living room, the likely point of entry into the home indicated

that an intruder's most likely route would have led him to have walked almost directly over Richard Marx. Mr. Marx also expressed a desire that Kristina not remember the incident. He protested his innocence throughout the interview.

Richard Marx, after consulting with his attorney, voluntarily submitted to a polygraph test. Detective Kelly Vaughn, a polygraph specialist, administered the test, and concluded that Richard Marx was not truthful in his responses to the questions. Detective Vaughn later testified that Richard Marx was upset, and that such emotional upset can affect the results of a polygraph examination.

After the polygraph examination, Mr. Marx consented to a search of his residence and automobile. The search uncovered soiled clothes and shoes, a shirt which appeared to have been freshly washed, and four photographs of Kristina, including one photo of Kristina nude and one involving frontal nudity, although all of the photographs seem to be the kind that most parents would have in the family album, or even on display. Also uncovered were several pornographic magazines, none of which involved children.

Detective Gumbinner consulted Assistant State Attorney Pam Roebuck, who in turn called State Attorney Colton. Mr. Colton advised Ms. Roebuck to tell Detective Gumbinner to hold off on the arrest until a statement was taken from the child and a polygraph examination was completed. Mr. Marx was arrested after the polygraph examination was completed, but no statement was ever taken from Kristina, despite the advice of the State Attorney.

Richard Marx had earlier expressed his willingness for blood, saliva, and hair samples to be taken from him, but upon his counsel's advise, withdrew his consent. A probable cause hearing was conducted before Judge Cianca, on Sunday, February 9, 1986. That court determined that probable cause did exist, and ordered Mr. Marx held without bond. On March 4, 1986, a bond reduction hearing was held before Chief Judge Trowbridge, who entered an Order reducing the bond to $50,000. The State also filed its information with the court, and the court ordered blood, hair and saliva samples from Mr. Marx. On March 5, 1986, at 9:30 a.m., Detective Timmann and Richard Marx went to the hospital, where the samples were obtained. Detective Timmann delivered the samples to the crime lab, and at 1:00 p.m., the same day, the forensic expert advised Detectives Gumbinner and Timmann that the blood from the victim and the samples from Richard Marx did not match. Assistant State Attorney Pam Roebuck was immediately contacted and the charges were dropped.

## III. DISCUSSION

### A. Probable Cause

■ The law is well settled that if probable cause exists to arrest a plaintiff, a subsequent action for violation of civil rights arising out of that arrest cannot survive. Proof of the actual existence of probable cause is an absolute bar to a 1983 action. *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Lesavage v. White*, 755 F.2d 814 (11th Cir.1985). The existence of probable cause must be evaluated on a "reasonable person" basis. Under Florida law, probable cause exists where the circumstances are sufficient to cause a reasonably cautious person to believe that the person accused is guilty of the offense charged. *Shriner v. State*, 386 So.2d 525, 528 (Fla.1980). The fact that a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself. *Brown v. State*, 91 So.2d 175, 177 (Fla.1956).

This Court first recognizes that this is a brutal crime that necessarily involves all of the participants in a highly emotional atmosphere—especially where, as here, the victim is so young. The victim's age also makes the taking of any kind of formal statement almost impossible, and makes it much more likely that there will be inconsistent and conflicting statements. One thing is clear here—the victim did say "Daddy did it" a number of times. Using hindsight, we know that Kristina was confused and that her statements that "a bad

man did it" were actually nearer the truth. At the time, however, the "bad man" and "Daddy" were not necessarily two different persons. The police acted on the only coherent statement they had—that "Daddy did it."

Added to Kristina's statements were the improbable circumstances of the crime itself. It is remarkable that Kristina could have been abducted almost from right under her father's nose, especially when he told the police that he was a very light sleeper and always alert to sounds from Kristina. There were also no signs of a forced entry. Now we know that Kristina *was* abducted and that Richard Marx, for whatever reason, did not sleep lightly that night, and did not hear his daughter.

Mr. Marx volunteered to take a polygraph examination. He failed that examination. It is unquestioned that he was experiencing great emotional distress at the time of the examination. That fact undoubtedly did affect the polygraph results. But, taking all of the above into consideration, this Court cannot say that there was no probable cause to arrest Richard Marx. Only scientific testing established that Mr. Marx was not the perpetrator.[1] At the time of his arrest, he was the most likely suspect, and Kristina identified him as the one who had "done it" to her.

This Court does disregard the evidence found in Richard Marx's home in this evaluation of whether probable cause existed. The photographs of Kristina appear to be the type of photographs that most parents take, and frontal, or even full nudity, as they appear in these pictures, of a child of this age, are not unusual. The pornographic magazines did not involve child pornography and thus this Court does not consider them evidence that a father would brutally rape his four-year old child. The evidence that is a basis for the determination of probable cause is the identification of her father by Kristina, the absence of any sign of a forced entry into the home, and the overall improbability of the circumstances as they appeared at that time.

Mr. Colton, the State Attorney, did tell Ms. Roebuck to advise the Sheriff's Office to await the result of the polygraph and to Kristina's statement before arresting Richard Marx. The Sheriff's Office did wait for the results of the polygraph examination, but Kristina was in surgery, under sedation, and unlikely to be able to give any type of formal statement for some time, if ever. She had informally, and in front of several witnesses, said "Daddy did it." There was no reason to doubt the existence or the reliability of those statements. Defendants, under the circumstances, reasonably accepted such statements in lieu of a formal statement.

### B. Qualified Immunity

■ Even if probable cause did not exist, Defendants are still entitled to qualified immunity because those Defendants reasonably believed such probable cause existed. The limits of a police officer's qualified immunity under § 1983 for obtaining an arrest warrant is "objective reasonableness." *Malley v. Briggs,* 475 U.S. 335, 344, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986). This Court holds that the same standard must apply for warrantless arrests. "Only where [the arrest] is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of immunity be lost." *Id.* at 344–45, 106 S.Ct. at 1098. The issue for immunity purposes is not probable cause in fact, but "arguable" probable cause. *Floyd v. Farrell,* 765 F.2d 1, 5 (1st Cir.1985). "An officer will be liable for seeking an arrest warrant later found to be without probable cause only if there *clearly* was no probable cause at the time the warrant was request-

---

1. Mr. Marx, while at the hospital, offered to submit hair, blood and saliva for testing. Detective Gumbinner did not take the samples at that time, and no exigent circumstances compelled him to do so in the absence of a warrant. Instead, Detective Gumbinner took Plaintiff to the Sheriff's Office for questioning. After the results of the polygraph examination, Plaintiff's counsel declined to allow Plaintiff to submit to the hair, blood and saliva testing. That testing was later conducted under court order and established that Plaintiff could not have been the perpetrator.

ed.... We think this rule can be extended to warrantless arrests as well...." *Id.*

 The circumstances of Plaintiff's arrest, as discussed above, meets the "objectively reasonable" standard. Additionally, although probable cause can not be established from facts arising after the arrest, the fact that two courts subsequently determined that probable cause existed to hold Plaintiff after his arrest, supports the officers' belief that probable cause existed, using the "objective reasonableness" standard. This Court cannot hold, on the basis of the evidence in the record, that no reasonably competent officer would have sought to arrest Plaintiff on the basis of the facts and circumstances known to the officers at the time of the arrest. If the conduct in making the arrest was objectively reasonable, an allegation of malice is not sufficient to defeat the immunity. *Myers v. Morris,* 810 F.2d 1437, 1457 (8th Cir. 1987). Further, "a police officer may be immune from liability under § 1983, even if it is later determined that probable cause for an arrest did not exist." *Saldana v. Garza,* 684 F.2d 1159, 1164 (5th Cir.1982). There can be liability *only* if there *clearly* was no probable cause at the time the arrest was made. *Floyd,* 765 F.2d at 5. The facts of this case simply do not support such a finding. Accordingly, Defendants are entitled to qualified immunity for Plaintiff's arrest.

### C. Injunctive Relief

██ Count II of the Amended Complaint alleges that the Martin County Sheriff's Office and State Attorneys' Office have a practice and policy of arresting persons without probable cause merely as a *method* of facilitating investigations. Plaintiff argues that even if Defendants are entitled to official immunity for the damages claims, that immunity will not protect them from an injunctive claim. *Pulliam v. Allen,* 466 U.S. 522, 542, 104 S.Ct. 1970, 1981, 80 L.Ed.2d 565 (1984).

This issue was discussed in *Hall v. Holt,* Case No. 86–8546–CIV–DAVIS, where Judge Davis entered an Order granting summary judgment (Order dated October 18, 1988), and stated that because probable cause existed to arrest the plaintiff, the plaintiff had not been injured by the policy, and thus had no standing to challenge it. The same reasoning applies here—because there was probable cause to arrest Plaintiff, Plaintiff has no standing to challenge an alleged policy of arresting suspects without probable cause in order to facilitate investigations.

### D. Conspiracy Charges

██ Plaintiff also claims that a conspiracy existed between the Defendants in this case to frame Plaintiff for the rape of his daughter. The Complaint alleges that Defendants "conspired to deprive RICHARD MARX of his civil rights, to be free of wrongful arrest and incarceration, despite the fact that they knew, or should have known, that there was no credible evidence to connect RICHARD MARX with the crime."

Plaintiff originally alleged that the conspiracy existed between Defendant ROEBUCK, the three defendant police officers, and other members of the Sheriff's Office. The Eleventh Circuit reviewed this Court's denial of absolute immunity for ROEBUCK and determined that ROEBUCK, and State Attorney COLTON were entitled to absolute immunity for advising the police officers that there was probable cause to arrest Plaintiff.[2] The Eleventh Circuit held that the absolute immunity doctrine applied even where Plaintiff alleged that Defendants acted unlawfully and therefore outside the scope of the entitlement to absolute immunity and that ROEBUCK was entitled to absolute immunity for the conspiracy claim. Thus, the only named defendants remaining in the conspiracy claim are the three defendant police officers.

This Court, in the discussion above, established that probable cause existed for the arrest, and thus that the arrest was not wrongful. Additionally, the Court concluded that Defendants acted in an "objectively reasonable" manner, and are entitled to

---

**2.** *Marx v. Gumbinner,* 855 F.2d 783, 790–91 (11th Cir.1988).

qualified immunity *for their actions in Plaintiff's arrest and incarceration.*

Therefore, facts of this case are insufficient, taken in the light most favorable to Plaintiff, to state a cause of action for conspiracy. The fact that the Defendants conferred among themselves, and reviewed the facts and procedures involved in bringing this matter before the court, does not establish a conspiracy, or strip Defendants of their qualified immunity. · As discussed above, qualified immunity is based on an *objective* standard—the objectively reasonable test—and courts will not examine the officer's motives once that test has been met. *Myers v. Morris,* 810 F.2d 1437 (8th Cir.1987). Where a plaintiff's allegations that a conspiracy existed are supported only by the fact that a certain decision was reached, and by an assertion that the defendants acted with malice, the allegations cannot stand. *Id.* at 1457. Therefore, because ROEBUCK is protected under the absolute immunity doctrine, and the defendant police officers are covered under the qualified immunity doctrine, summary judgment must be granted for Defendants on Plaintiff's conspiracy claim.

### E. Pendent State Claims

Where a plaintiff has alleged a federal question cause of action which requires trial, a federal court may exercise jurisdiction over pendent state law claims when the state law claims arise from a common nucleus of operative facts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The Complaint, in Count III, alleges state claims for false arrest and imprisonment. It is apparent to this Court, under the analysis given above, that the allegations fail to state a cause of action upon which relief can be granted. Probable cause is an absolute defense under Florida law to a claim for false arrest and/or false imprisonment. *Wille v. Raymond,* 487 So.2d 1211 (Fla. 4th DCA 1986).

Both Plaintiff and Defendants argue that once the federal claims have been dismissed, pendent jurisdiction no longer exists, and this Court may not decide the state claims. The Plaintiff stated in his memorandum in response to Defendant's motion for summary judgment that "[i]f the federal question claims fail to survive the Motion for Summary Judgment, then the federal court has no jurisdiction over the state law claims, as they are no longer 'pendent' to the federal question case."

This Court agrees. Where the Plaintiff is unable to state a claim having federal jurisdiction, "the proper procedure in almost all cases is to dismiss pendent state claims when the federal claims are dismissed before trial." *Local Division 732, etc. v. Metropolitan Atlanta, etc.,* 667 F.2d 1327, 1345, n. 33 (11th Cir.1982). Therefore, because Plaintiff cannot state a federal cause of action as to these Defendants, this Court may not maintain jurisdiction over the pendent state claims and the same will be dismissed without prejudice.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion for Summary Judgment is GRANTED. Defendants shall submit a proposed judgment to this Court within ten (10) days of the date of this Order.

DONE AND ORDERED.