Mark WHITTINGTON, Plaintiff,

v.

TOWN OF SURFSIDE, a municipality, Patrick John Giambalvo, and Luis Perez, individually Defendants.

No. 06–CIV–21032.

United States District Court, S.D. Florida.

June 6, 2007.

Keith Chasin, Chasin & Stinson, Miami, FL, for Plaintiff.

Richard Hunt McDuff, Scott David Alexander, Johnson Anselmo Murdoch Burke Piper & McDuff, Fort Lauderdale, FL, Lourdes Espino Wydler, Oscar Edmund Marrero, Law Offices of Oscar E. Marrero, Coral Gables, FL, for Defendants.

*ORDER GRANTING DEFENDANTS PATRICK GIAMBALVO AND LUIS PEREZ'S MOTION FOR SUMMARY JUDGMENT [DE #57]; GRANTING DEFENDANT TOWN OF SURFSIDE'S MOTION FOR SUMMARY JUDGMENT [DE #55]; DISMISSING TOWN OF SURFSIDE'S MOTION IN LIMINE [DE #74] AS MOOT; ENTERING FINAL JUDGMENT AGAINST PLAINTIFF; AND CLOSING CASE*

ALAN S. GOLD, District Judge.

THIS CAUSE came before the Court upon a Motion for Summary Judgment filed by Defendant Town of Surfside ("Surfside") on February 7, 2007 [**DE # 55**] and a Motion for Summary Judgment filed by Defendants Officers Patrick John Giambalvo ("Officer Giambalvo")[1] and Luis Perez ("Officer Perez") [**DE # 57**] filed on February 9, 2007. On February 22, 2007 and February 26, 2007. Plaintiff filed Responses to these Motions [**DE # 61 & 62**]. Thereafter, Surfside and the Officers filed Reply Briefs [**DE # 63 & 65**].

## I. Background

The following facts are gleaned from the review of the record, the parties' submis-

---

1. Plaintiff originally sued an individual known as "Paul Giambalvo." On August 24, 2006, Plaintiff filed a "Motion to Amend his Complaint." In the Motion to Amend his Complaint, Plaintiff stated that the "Complaint erroneously is styled against Paul Giambalvo" rather than Patrick John Giambalvo [**DE # 28**]. On September 14, 2006, I granted Plaintiff's "Motion to Amend his Complaint by Interlineation" [**DE # 29**]. On the same day, Plaintiff filed an Amended Complaint [**DE # 30**].

sions, and are viewed in the light most favorable to the Plaintiff when evaluating the pending Motions for Summary Judgment. On or about February 19, 2004, Plaintiff Mark Whittington was at the bus stop on Collins Avenue and 194th Street in Surfside, Florida waiting for a Metro Transit bus, when a posted sign fell and allegedly injured him. (Depo. of Mark Whittington, 68). Plaintiff testified that he thought that a group of young people may have caused the sign to become loose and that the young people started to laugh at him after the sign hit him. (Depo. of Mark Whittington, 73). Plaintiff then confronted the young people and Plaintiff and the young people had a verbal altercation. (Depo. of Nicholas Andrade, 10). At that time, Officer Perez who was on foot patrol in the area was approached by an alleged eyewitness, Chris Marco, who informed the officer that he saw Plaintiff tear off the sign from the pole of the bus stop. (Exhibit A.1 and A.2 to Town of Surfside's Motion for Summary Judgment).[2] Thereafter, the police officer came up from behind Plaintiff and allegedly stared at him for several minutes as he spoke to the alleged eyewitness, then let him board the bus.[3] Plaintiff denies that he pulled the sign down. (Depo. of Mark Whittington, 68).

Both Plaintiff and Nicholas Andrade then boarded the bus, but the young people who Plaintiff had the argument with did not. (Depo. of Nicholas Andrade, 15). Once Plaintiff got on the bus, he went to the back and sat near two African–American men, whom he though were construction workers. (Depo. of Mark Whittington, 88). Thereafter, Surfside police stopped the bus. Once the bus was stopped, Plaintiff went from the back of the bus to the front of the bus to distance himself from the two construction workers, whom he though had contraband on them. (Depo. of Mark Whittington, 88). It is alleged that the officers without warning grabbed Plaintiff and said "get off the bus" "you God damn scumbag." (Depo. of Mark Whittington, 92). As the police officers grabbed and pulled him down, the momentum took the Plaintiff and officers into the bushes, where the officers landed on top of Plaintiff's upper torso and his knee popped. (Depo. of Mark Whittington, 93).[4] When Plaintiff was up against the hedges, one of the police officers fell

2. Chris Marco allegedly told Officer Perez that he had seen a white male fitting Plaintiff's description (i.e. wearing a Miami Hurricanes sweatshirt) vandalize and remove a county bus sign. (Exhibits A.1. and A.2 to Town of Surfside's Motion for Summary Judgment).

3. In his deposition Nicholas Andrade was asked whether he witnessed Plaintiff commit any crime in his presence. On this point, Nicholas Andrade stated:

A: No. I didn't, unless you consider breaking down a sign, public sign from its place and throwing it, if that's a crime, then that's a crime. But other than that, I didn't see him commit any other crime.
(Depo. of Nicholas Andrade, 14).

4. On this point, Plaintiff testified:

Q: Okay. All right. I'm trying to make sure I have a clear picture of some areas I just want to clarify with you.

Giambalvo grabs you by the shirt and pulls you off the bus. How is it you get from the bus to the bushes?

A: Very fast.

Q: But how far is the door of the bus to where there bushes are?

A: Let's see. As long as this table.

Q: Eight to ten?

A: Maybe just a little bit longer.

Q: Ten feet or so?

A: Less than ten.

Q: Less than ten feet. How does momentum get you across that ten feet? How does that occur?

on his legs or applied pressure to his legs and he was handcuffed. (Depo. of Mark Whittington, 106). Plaintiff does not testify that he was punched. (Depo. of Mark Whittington, 111). Also, he does not assert that he was kicked, tasered, pepper sprayed or that any weapon, such as a club, were utilized. *Id.*[5] Plaintiff testified that he was not sure if any officer punched him, because he only felt pressure either by a fist or foot on his calf. (Depo. of Mark Whittington, 111, 113 and 130).

> A: I believe I was-well, I was standing at the top of the bus, and they had to reach to grab me. And as they did, I guess the momentum, with everyone grabbing me and getting in the pile, just took everyone that way. (Depo. of Mark Whittington, 102).

5. Plaintiff initially testified as to what he thought may have been a kick to his calf, but he later admitted that this was just as likely an officer placing a foot on him for control purposes, rather than any type of blunt trauma intending to inflict pain. (Depo. of Mark Whittington, 112). On this point, Plaintiff testified:

> Q: Did you see Officer Perez punch or kick you?
> A: I didn't see any officer punch or kick me.
> Q: You testified that if there was some sort of pressure in your back, it was one of the officers on the side?
> A: I'm assuming that because the officers Giambalvo and Officer Perez, they both had me-my upper torso, controlling me that way. And then the other officers came, and I guess it was them-that was physically touching me, you know, in my legs and stuff.
> Q: Okay. So, it's fair to say that neither Officer Giambalvo or Officer Perez were one of the officers that were on the side that you're talking about?
> A: Right.
> (Depo. of Mark Whittington, 130–131).

6. On this point, Officer Giambalvo testified:

> Q: And tell the ladies and gentlemen of the jury why it is as a law enforcement officer that you would elect to frisk someone and

Plaintiff sustained an injury to his knee which resulted in medical expenses. (Depo. of Mark Whittington, 101).

Officer Fiorito, who was the partner of Officer Giambalvo, allegedly witnessed Plaintiff discharge a white plastic bottle as Plaintiff attempted to exited the bus.[6] Plaintiff claims that the bottle was not his and presumes that it belonged to one of the African–American men who were sitting in front of him on the bus. (Depo. of

> to secure them, certain people, when you're questioning them.
> A: Well, based on their attitude and based on their, you know verbal responses. And also in this case in particular, Officer Fiorito stated that he observed the witness throw something to the back of the bus while he was walking from the back, to the front, from the back to the front. This is why we decided to place him in restraints to question him, because we didn't know if there were any weapons involved. So-
> Q: In police parlance, is there a term you often use called officer safety?
> A: Correct.
> Q: And tell us what it is that officers are instructed about officer safety when stopping someone who has just ditched something or potentially thrown something?
> A: It's well protocol to, you know, handcuff individuals that we have reason to believe have committed some type of crime for officer safety purposes.
> Q: What comments did Fiorito make to you about this gentleman having thrown something or did something in the bus?
> A: He observed the Defendant [referring to Plaintiff in this case] throw a white bottle or something of that nature to the back of the bus while he was walking to the front.
> Q: At some point in time was that bottle recovered?
> A: Yes.
> Q: And who recovered the bottle?
> A: I did.
> Q: Where did you recover it?
> A: From the back of the bus.
> Q: Was it on the floor or on a seat?
> A: Underneath a seat.
> (Depo. of Patrick Giambalvo, 41–42).

Mark Whittington, 89).[7] When Officer Giambalvo searched the bus, he found that the white plastic bottle contained a small amount of marijuana. (Depo. of Mark Whittington, 89–90). Plaintiff testified that he does not take issue with Officer Giambalvo's testimony that the bottle was found on the bus. (Depo. of Mark Whittington, 89).[8] Instead, Plaintiff argues that the bottle was not his.

Plaintiff was arrested for possession of marijuana and criminal mischief.[9] Plaintiff was issued a notice to appear instead of being transported to jail. (Depo. of Mark Whittington, 54–55). Thereafter, all of the charges against Plaintiff were dropped because the arresting officer failed to appear in court.

The Amended Complaint was a six Count Complaint. In Count I, Plaintiff alleged that Surfside is liable for the alleged negligence of Officers Giambalvo and the other Officers. (Amended Complaint, ¶¶ 12–14). In Count II, Plaintiff alleged that Surfside falsely arrested and detained him. (Amended Complaint, ¶ 15–18). In Count III, Plaintiff alleged that Surfside maliciously prosecuted him. (Amended Complaint, ¶¶ 19–23). In Count IV, Plaintiffs alleged that Surfside is liable under 42 U.S.C. § 1983 for the actions of Officers Giambalvo and Perez because Surfside learned of or should have learned of facts or a pattern of inappropriate conduct by its officers, including Giambalvo, yet Surfside demonstrated deliberate indifference toward the constitutional rights of Plaintiff by failing to take any appropriate action that was obviously necessary to prevent the police brutality practiced by Officers

---

7. Another passenger, Murray Maeisae, allegedly told the officers that he watched Plaintiff throw the little white bottle on the ground as he attempted to get out of the bus. (Exhibit A.1 in Support of Town of Surfside's Motion for Summary Judgment). Plaintiff argues that Murray Maeisae was never identified and that he lost all rights to confront this accuser.

8. On this point, Plaintiff testified:
Q: The police claimed to have found a white-little white bottle with marijuana in it?
A: Yes.
Q: Did you ever see this little white bottle?
A: No, I didn't. The first time I saw it is when the police officer, the blonde haired guy, got off the bus, holding it.
Q: So, if Officer Giambalvo, the blond hair officer, says that he found a white bottle with marijuana on the bus, you don't take any issue with that, right.
A: No.
Q: You just say it wasn't yours?
A: Yes.
(Depo. of Mark Whittington, 89).

9. In relevant part, Fla. Stat. 806.13 provides:
(1)(a) A person commits the offense of criminal mischief if he or she willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto.
(b) 1. If the damage to such property is $200 or less, it is a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
2. If the damage to such property is greater than $200 but less than $1,000, it is a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.
3. If the damage is $1,000 or greater, or if there is interruption or impairment of a business operation or public communication, transportation, supply of water, gas or power, or other public service which costs $1,000 or more in labor and supplies to restore, it is a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
4. If the person has one or more previous convictions for violating this subsection, the offense under subparagraph 1. or subparagraph 2. for which the person is charged shall be reclassified as a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Perez and Giambalvo. (Amended Complaint, ¶ 28). Moreover in Count IV, Plaintiff alleged that Surfside violated his substantive due process right to be free from unlawful arrest, his substantive due process right be free from excessive physical assault amounting to police brutality, and right and privilege not to be deprived of life and liberty without due process and equal protection of the law. (Amended Complaint, ¶ 27(A)-(C)). In Counts V and VI, Plaintiff sued Officers Giambalvo and Perez in their individual capacities pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiff's constitutional rights. (Amended Complaint, Counts V and VI).

In response to the Amended Complaint, Defendants filed Motions to Dismiss [DE # 1 & 4]. On December 29, 2006, I issued an Order addressing the Motions to Dismiss [DE # 50]. In the December 29, 2006 Order, I dismissed Counts I and III based on Surfside's negligence and for malicious prosecution. Additionally, I dismissed Plaintiff's constitutional claims for alleged violations of his due process rights pursuant to the Fourteenth Amendment based on the Officer's use of excessive force and their alleged false arrest of Plaintiff against Surfside contained in Count IV as well as Plaintiff's constitutional claims for violations of his due process rights pursuant to the Fourteenth Amendment against Officers Giambalvo and Perez contained in Counts V and VI. Moreover, I dismissed Plaintiff's constitutional claims for alleged violations of his equal protection rights pursuant to the Fourteenth Amendment against Defendants Giambalvo, Perez, and Surfside contained in Counts IV, V, and VI without prejudice. Furthermore, I allowed Plaintiff leave to file an Amended Complaint to plead with more specificity his claims of municipal liability pursuant to 42 U.S.C. § 1983

against Surfside contained in Count IV and his claims for alleged Fourth Amendment violations against Defendants Giambalvo and Perez contained in Counts V and VI. Thereafter, Plaintiff filed a Second Amended Complaint on January 15, 2007 [DE # 52].

Pursuant to the Second Amended Complaint, the following claims remain. Plaintiff asserts two causes of action against Surfside: one count for false arrest and false imprisonment or detention under Florida common law in Count II, and another count under section 1983 for alleged violations of substantive due process, equal protection and the Fourth Amendment in Count IV. Count V against Officer Giambalvo includes § 1983 claims pursuant to the following legal theories: Fourth Amendment false arrest; Fourth Amendment excessive force; substantive due process; and equal protection under the law. Count VI against Officer Perez includes § 1983 claims for Fourth Amendment false arrest; substantive due process; and equal protection under the law and an excessive force claim against Officer Perez. Thereafter, the Defendants filed Motions for Summary Judgment that are the subject of this Order.

## II. Standard of Review

Summary Judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See Fed.R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of meeting this rather exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In applying this framework, the evidence, and all reasonable factual inferences drawn therefrom,

must be viewed in the light most favorable to the nonmoving party. *See Arrington v. Cobb County*, 139 F.3d 865, 871 (11th Cir. 1998); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

Equally clear, however, is the principle that the nonmoving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his or her favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). The nonmoving party "[m]ay not rest upon the mere allegations and denials of [its] pleadings, but [its] response... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir.1998)(holding that "summary judgment may be granted if the evidence is 'merely colorable.'")

### III. Summary of Claims Resolutions In Order

I will address the Plaintiff's claims in the following order: (1) whether the facts of this case substantiate a § 1983 claim based on false arrest against either Officer Perez and/or Giambalvo; (2) whether the actions of Officer Giambalvo and/or Officer Perez in effectuating Plaintiff's arrest constitute excessive force and provide the basis for a viable § 1983 claim against either Officer; (3) whether Plaintiff's claims based upon substantive due process and equal protection violations pursuant to the Fourteenth Amendment survive Defendants' Motions for Summary Judgment; (4) whether the state law claims based on false arrest and false imprisonment/detention against Surfside are viable; and (5) whether Plaintiff has established for Summary Judgment purposes that an official custom or policy of Surfside was the moving force behind any purported deprivation of Plaintiff's constitutional rights.

### IV. Legal Analysis

### A. Qualified Immunity

 "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir.2002) quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Here, it is clear and undisputed that Officers Giambalvo and Perez were acting within the course and scope of their discretionary authority when they arrested the plaintiff. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*

 The United States Supreme Court has set forth a two part test for the qualified immunity analysis. "The threshold

inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." [10] *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. However, "[i]f a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" *Vinyard,* 311 F.3d at 1346, quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. Thus, the court must first analyze whether the actions of Officers Giambalvo and Perez, taken in the light most favorable to Plaintiff, violated Plaintiff's constitutional rights.[11]

**10.** As the Eleventh Circuit in *McClish v. Nugent,* 483 F.3d 1231, 2007 WL 1063337, *5 (11th Cir.2007) recently stated regarding the two-step process:

> However, as the Supreme Court has made abundantly clear, qualified immunity determinations may not be disposed of in this *arguendo* form, by first simply assuming the violation and then proceeding to address whether the law was clearly established at the time of the infraction. *Saucier,* 533 U.S. at 201, [121 S.Ct. 2151]. Although both qualified immunity inquiries are logically related, the two inquiries must be conducted in the proper order. We may not assume an answer to the first question in order to avoid difficult constitutional issues. The Supreme Court has explained the requirement in these clear terms:
>> In the course of determining whether a constitutional right was violated on the premises alleged, a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established. This is the process for the law's elaboration from case to case, and it is one reason for our

*B. False Arrest Claims Brought Pursuant to § 1983 Against Officers Giambalvo and Perez Fail Because of the Existence of Either Actual or Arguable Probable Cause*

While a warrantless arrest without probable cause violates the Constitution and provides a basis for a 42 U.S.C. § 1983 claim, the existence of probable cause at the time of arrest constitutes an absolute bar to a 42 U.S.C. § 1983 claim for false arrest. *Marx v. Gumbinner,* 905 F.2d 1503, 1505–6 (11th Cir.1990). In *Marx,* the Eleventh Circuit defined probable cause as:

> "Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States,* 338 U.S. 160, 175–76 [69 S.Ct. 1302, 93

> insisting upon turning to the existence or nonexistence of a constitutional right as the first inquiry. The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case. *Id.*

**11.** Put another way, first the court must consider "in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. If, in doing this, the court finds that no constitutional right was violated, the inquiry ends there and the defendant is entitled to qualified immunity. If the facts disclose a constitutional violation, however, the court then must ask whether, at the time the violation occurred, "every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens–Clarke Co.,* 378 F.3d 1274, 1278–79 (11 Cir.2004).

L.Ed. 1879] (brackets in original) (citing *Carroll v. United States,* 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543] (1925)); *Wilson v. Attaway,* 757 F.2d 1227, 1235 (11th Cir.1985). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information," *Beck v. Ohio,* 379 U.S. 89, 91 [85 S.Ct. 223, 13 L.Ed.2d 142] (1964), and probable cause "must be judged not with clinical detachment but with a common sense view to the realities of normal life." *Wilson,* 757 F.2d at 1235.

 Furthermore, in the context of qualified immunity analysis, the issue is not whether actual probable cause existed but instead whether there was "arguable probable cause" for the plaintiff's arrest. *See Davis v. Williams,* 451 F.3d 759, 762–63 (11th Cir.2006)(stating that in the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause" to effectuate the arrest). The Eleventh Circuit in *Skop v. City of Atlanta,* 485 F.3d 1130, 1137–38 (11th Cir.2007) stated in relevant part:

> While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity. We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause. As the Supreme Court observed in *Anderson v. Creighton,* 483 U.S. 635, 641 [107 S.Ct. 3034, 97 L.Ed.2d 523] (1987), "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases

those officials ... should not be held personally liable." Thus, even if we determine that the officer did not in fact have probable cause, we apply the standard of "arguable probable cause," that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Lee v. Ferraro,* 284 F.3d 1188, 1195 (11th Cir.2002) (emphasis added, quotation marks omitted). Indeed, this is "all that is required for qualified immunity to be applicable to an arresting officer." *Scarbrough v. Myles,* 245 F.3d 1299, 1302 (11th Cir.2001) (per curiam). This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists.

Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime, *Crosby v. Monroe County,* 394 F.3d 1328, 1333 (11th Cir. 2004), and the operative fact pattern. Here, the officer suggests that there are two possible crimes for which Skop could be arrested: obstructing a police officer in the lawful discharge of his official duties, and refusing to obey an order from an officer directing traffic. If Officer Brown possessed probable cause or arguable probable cause to arrest Skop for either, he is entitled to qualified immunity.

*See also Jones v. Cannon,* 174 F.3d 1271, 1283 n. 3 (11 Cir.1999) (noting that "arguable probable cause" and not the higher standard of actual probable cause governs the qualified immunity inquiry). Law enforcement officials who reasonably, but

mistakenly, conclude that probable cause is present are entitled to qualified immunity. *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). Furthermore, "arguable probable cause" exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officers effectuating the arrest could have believed that probable cause existed. *See Thornton v. City of Macon,* 132 F.3d 1395, 1399 (11th Cir.1998).

█ In addition to this, under federal and state law, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Lee v. Ferraro,* 284 F.3d 1188, 1196 (11th Cir. 2002). Accordingly, so long as probable cause existed to arrest Plaintiff for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges. *Id.*

█ Whether a particular set of facts gives rise to actual probable cause or "arguable probable cause" for an arrest depends on the elements of the crime. *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir.2004). Therefore, in order to determine whether either actual probable cause or "arguable probable cause" existed to arrest the plaintiff, I first examine the crime of criminal mischief under Florida law.[12]

The criminal mischief statute, section 806.13(1)(a), Florida Statutes (1989), provides:

A person commits the offense of criminal mischief if he willfully and maliciously injures or damages by any means any real or personal property belonging to another, including, but not limited to, the placement of graffiti thereon or other acts of vandalism thereto.

█ Damage to the property of another is an essential element of the offense of criminal mischief. *D.B. v. State,* 559 So.2d 305 (Fla. 3d DCA 1990); *Valdes v. State,* 510 So.2d 631, 632 (Fla. 3d DCA 1987) *review denied, State v. J.C.B.,* 520 So.2d 586 (Fla.1988); *Roberts v. State,* 461 So.2d 212, 214 (Fla. 1st DCA 1984); *N.R. v. State,* 452 So.2d 1052 (Fla. 3d DCA 1984). However, the specific value of the property damage is relevant only to the severity of the crime. *Valdes,* 510 So.2d at 632.

According to section 901.15(9)(b), Florida Statutes, a police officer can make an arrest without a warrant for a violation of section 806.13 if probable cause is present. Specifically, section 901.15(9)(b) states in relevant part that an arrest without a warrant is permitted if: "There is probable cause to believe that the person has committed ... (b) An act of criminal mischief or a graffiti-related offense as described in s. 806.13."

In his briefs and at oral argument, Plaintiff placed significant emphasis on the fact that Officer Perez did not witness the events giving rise to the criminal mischief charge and therefore could not arrest Plaintiff for criminal mischief. This argument is without merit because a plain reading of 901.15(9) indicates that the presence of a police officer is not neces-

---

**12.** The Plaintiff argues that the dispatcher informed the officers that the bus should be stopped for "vandalism" as opposed to criminal mischief which is one of the charges he was ultimately arrested for. However, the Eleventh Circuit law is clear on this point. If the officers possessed probable cause to arrest the Plaintiff for any offense, all of his claims for § 1983 false arrest fail even if probable cause was lacking for another offense. *See Lee v. Ferraro,* 284 F.3d 1188, 1196 (11th Cir.2002).

sary in order to make an arrest without a warrant for criminal mischief.[13]

Viewing the facts in the light most favorable to Plaintiff, the record establishes that Officer Perez was approached by an eyewitness, Chris Marco, who reported that an individual fitting Plaintiff's description vandalized and/or removed a county bus sign. There is no evidence in the record to suggest that Officer Perez knew or should have know that Chris Marco, was fabricating his report. Nor has Plaintiff put forward any evidence that Chris Marco's report was actually fabricated. Even if Plaintiff's denial that he vandalized the sign is credited for purposes of these Motions, that does not negate that Officer Perez reasonably relied upon Chris Marco's report, even if Chris Marco's report was made in error. *See Marx*, 905 F.2d at 1506 (holding that statement made by arrestee's four-year-old daughter after she was raped, that "Daddy did this to me," together with arrestee's incriminating statement and failure of polygraph examination, gave police officers probable cause to make arrest, precluding officers from being held liable in civil rights action after blood test proved that arrestee was not the rapist). Absent competent and admissible record evidence that Chris Marco was objectively unreliable or untrustworthy, actual probable cause existed for Plaintiff's arrest on the criminal mischief charge.[14]

■ Additionally, I conclude that actual probable cause existed for the possession of marijuana charge as well. This conclusion is compelled by the fact that Officer Fiorito, who was Officer Giambalvo's partner, witnessed Plaintiff attempting to dispose of the plastic white bottle as the Officers attempted to board the bus. When Officer Giambalvo searched the bus, he found that the plastic white bottle contained the marijuana.[15] Given these facts, Officers Giambalvo had probable cause to

---

**13.** Plaintiff's argument is at best a misreading of section 901.15, which outlines the situations where an arrest without a warrant is allowed. Of course one of the situations permitting a warrantless arrest occurs when a law enforcement officer witnesses a felony or misdemeanor in his or her presence. However, there are circumstances outlined in 901.15 where a police officer may arrest an individual without witnessing the crime. At oral argument, the parties advised that they were not able to locate any case law indicating that the presence of police officers at the time of the alleged violation was necessary to arrest an individual for a charge of criminal mischief. After reviewing Florida law on statutory interpretations, I conclude that there is no reason to divert from a plain reading of section 901.15(9)(b) which does not require the officer to personally witness the offense of criminal mischief.

**14.** As discussed above, this conclusion is also compelled by the fact that Fla. Stat. § 806.13 is one of the enumerated exceptions for which an arrest without a warrant may be made even if the officer did not witness the crime,

or any elements thereof. Thus, Officer Perez's reliance on an alleged witness was not misplaced.

**15.** Plaintiff relied upon two cases, *City of Clearwater v. Williamson*, 938 So.2d 985 (Fla. 2d DCA 2006) and *City of St. Petersburg v. Austrino*, 898 So.2d 955 (Fla. 2d DCA 2005), to support the proposition that an eyewitness account alone was insufficient to establish probable cause to support an arrest. However, neither case supports this proposition. Specifically, the Second District in *City of Clearwater* stated that probable cause existed to substantiate an arrest based upon the eyewitness report of arrestee's estranged girlfriend who stated that arrestee molested her 2–year old child. Thus, *City of Clearwater*, stands for the proposition that the officer who made the arrest had probable cause because he reasonably relied upon the only eyewitness account of the alleged crime. The other case upon which Plaintiff relies is *City of St. Petersburg v. Austrino*, 898 So.2d 955 (Fla. 2d DCA 2005) is also distinguishable from this case. In *City of St. Petersburg*, the officer who arrested suspect relied upon the statement of a

charge Plaintiff for possession of marijuana.

Even if actual probable cause did not exist for one of the charges, Officer Perez and Giambalvo had at least "arguable probable" cause to arrest Plaintiff for the other charge.[16] In reaching this conclusion, I am cognizant that qualified immunity protects law enforcement officers like Officers Perez and Giambalvo, who reasonably, but perhaps mistakenly, conclude that probable cause exists for an arrest in a situation. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). In this case, given the totality of the circumstances, Officers Perez and Giambalvo also had "arguable probable cause" for Plaintiff's arrest on one or both of the charges. Since at least "arguable probable cause" was present for one or both of the charges for which Plaintiff was arrested, Officers Perez and Giambalvo are entitled to qualified immunity for any false arrest claims brought pursuant to § 1983.

## C. Plaintiff's Excessive Force Claims against Officer Giambalvo Fails Because the Amount of Force Used was De Minimis and Officer Giambalvo is Entitled to Qualified Immunity

The issue here is whether there is a constitutional violation under 4th Amendment. As stated above, "[q]ualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard*, 311 F.3d at 1346 quoting *Harlow*, 457 U.S. at 818, 102 S.Ct. 2727. To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee*, 284 F.3d at 1194. As noted above, it is undisputed that Officer Giambalvo was acting within his discretionary authority at all times pertinent to Plaintiff's Complaint.[17]

non-law enforcement personal, who was not an eyewitness to the purported crime. In contrast in this case, the officers interviewed individuals who either witnessed the crimes or had direct knowledge of the crimes. Furthermore, there is no evidence in this record to suggest that Officer Perez had reason not to believe the eyewitness.

16. In relevant part *Lee v. Ferraro*, 284 F.3d 1188, 1195–1196 (11th Cir.2002), the Eleventh Circuit stated:

Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Id.* (quoting *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir.1998) (internal citations omitted)). In determining whether arguable probable cause exists, "[w]e apply an objective standard, asking 'whether the officer's actions are objectively reasonable ...

regardless of the officer's underlying intent or motivation.'" *Vaughan v. Cox*, 264 F.3d 1027, 1036 (11th Cir.2001) (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)). "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform arresting officers into prosecutors." *Scarbrough*, 245 F.3d at 1302–03.

17. From a reading of the Complaint and the Plaintiff's submissions, it is not clear whether Plaintiff is alleging that Officer Perez should be held liable for the use of excessive force pursuant to § 1983 as well. At oral argument, counsel for Plaintiff stated that the Second Amended Complaint alleges an excessive force claim against Officer Perez. However, it is undisputed that Officer Perez arrived after Plaintiff had already been handcuffed and was on the side of the curb. Given the fact that Officer Perez had either probable or

The United States Supreme Court has held that claims of excessive force in the course of an arrest, investigatory stop, or other seizure, should be analyzed under the Fourth Amendment and its "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). This standard requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interests alleged to justify the intrusion. *Tennessee v. Garner,* 471 U.S. 1, 7–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The reasonableness of a particular use of force must be considered from the perspective of a reasonable officer on the scene rather than by employing 20/20 hindsight. *Saucier,* 533 U.S. at 204–205, 121 S.Ct. 2151. Whether the force is reasonable hinges on the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. 1865.

Police officers are often forced to make split-second judgments in circumstances that are "tense, uncertain, and rapidly evolving" about the amount of force that is necessary in a particular situation. *Graham,* 490 U.S. at 396–397, 109 S.Ct. 1865. Therefore, not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. *Id.* Because "[g]overnment officials are not required to err on the side of caution," *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1031 n. 8 (11 Cir.2001), qualified immunity is appropriate in close cases where a reasonable officer could have believed that his actions were lawful. *See Saucier,* 533 U.S. at 205–206, 121 S.Ct. 2151.

Since Officer Giambalvo was acting in the scope of their authority as discussed above, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. *Lee,* 284 F.3d at 1194. As discussed above, the United States Supreme Court has set forth a two-part test for qualified immunity analysis. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." *Hope,* 536 U.S. at 736, 122 S.Ct. 2508. If a constitutional right would have been violated under Plaintiff's version of the facts, the next, sequential step is to ask whether the right was clearly established. *Saucier,* 533 U.S. at 201–202, 121 S.Ct. 2151. Under this two-step process, the court must first analyze whether the actions of Officer Giambalvo violated the plaintiff's constitutional rights. As I stated above, the Eleventh Circuit recognizes that the typical arrest involves some force. *See Nolin v. Isbell,* 207 F.3d 1253, 1257–58 (11th Cir.2000)(holding that an officer was entitled to qualified immunity where an officer grabbed the plaintiff from behind by the shoulder and wrist, threw him against a van, kneed him on the back, pushed his head into the side of the van, searched his groin in an uncomfortable manner, and handcuffed him because the force used was *de minimis* ).

In this case, Officer Giambalvo was conducting an investigation into alleged van-

---

"arguable probable cause" to arrest Plaintiff for the criminal mischief offense, Officer Perez can not be held liable for the actions of Officer Giambalvo in effectuating that arrest. Thus, any excessive force claim against Officer Perez fails.

dalism at the bus stop that led to a traffic-stop of a bus full of passengers when an individual attempted to de-board the bus, and presumably, the suspect of the investigation discharged an item in the presence of Officer Fiorito, who was Giambalvo's partner. This series of events gave Officer Giambalvo the "right to make an arrest or an investigatory stop" which necessarily carried with it the "right to some degree of physical coercion or threat thereof to effect it." *Graham,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

 Thus, I conclude that under the totality of the circumstances and taking the facts in the light most favorable to Plaintiff, that the amount of force utilized by Officer Giambalvo in arresting Plaintiff was reasonable and a *de minimis* use of force. In reaching this conclusion, I rely on Plaintiff's own testimony that he was not hit or kicked by any of the officers. (Depo. of Mark Whittington, 112–130). Additionally, Plaintiff testified that the "momentum carried us all" to the bushes and it felt like someone fell on top of him. (Depo. of Mark Whittington, Depo. 93, 99, 100, 106–107).[18] Since Plaintiff has not demonstrated that Officer Giambalvo's actions violated his constitutional rights, the inquiry into Officer Giambalvo's qualified immunity ends here. Therefore, Plaintiff's claim based on Officer Giambalvo's use of excessive force in effecting Plaintiff's arrest fails. Because I find no constitutional right was violated under the established allegations, I need not proceed to the next step of the analysis dealing of whether the right was clearly established.

### D. Plaintiff's Section 1983 Claims Based Upon Substantive Due Process and Equal Protection Violations Fail as a Matter of Law and are Abandoned

Although I dismissed with prejudice Plaintiff's claims for 14th Amendment due violations, Plaintiff has re-alleged them in Count IV against Surfside and in Counts V and VI against Officers Giambalvo and Perez. For the reasons articulated in my December 29, 2006 Order and pursuant to the United States Supreme Court's decision in *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), Defendants are entitled to judgment as a matter of law as to all claims based on alleged violations of the substantive due process clause of the 14th Amendment.

In my Order dated December 29, 2006, I advised Plaintiff that an equal protection claim may only be supported by evidence that he was discriminated against because of his membership in a protected class. Notwithstanding, Plaintiff has not demonstrated that he was a member of a protected class within the meaning of the equal protection clause. Therefore, Plaintiff's claims based on equal protection violations fail as well.

Alternatively, dismissal of Plaintiff's substantive due process and equal protection claims is warranted because Plaintiff has elected not to respond to Defendants' arguments with respect to these claims. Thus, I view Plaintiff's claims based upon substantive due process violations and

---

**18.** If one of the Officers accidentally fell on Plaintiff which caused his knee injury, such set of facts does not give rise to a § 1983 claim for excessive force. To maintain a § 1983 claim, Plaintiff must prove more than mere negligent conduct to prove a constitutional deprivation. *See generally Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662 (1986).

equal protection violations as abandoned.[19]

**E. The State Law Claim of False Arrest and False Imprisonment/Detention Brought Against Surfside Fails Because the Officers Had Probable Cause to Arrest Plaintiff**

■ Next, I address the state law claims brought against Surfside in Count II of the Second Amended Complaint for false arrest and false imprisonment. Under Florida law, false arrest and false imprisonment/detention are "different labels for the same cause of action." *Andrews v. Florida Parole Comm'n*, 768 So.2d 1257, 1266 (Fla. 1st DCA 2000) (false arrest and false imprisonment are "essentially the same tort"). As under federal law, the existence of probable cause bars a claim under Florida law for false arrest and false imprisonment. *See Von Stein v. Brescher*, 904 F.2d 572, 584 n. 19 (11th Cir.1990) (noting that, in Florida, existence of probable cause disposes of, inter alia, state law claim for false arrest); *Mas v. Metro. Dade County*, 775 So.2d 1010, 1011 (Fla. 3rd DCA 2001) ("[P]robable cause is a complete bar to an action for false arrest and false imprisonment.") Therefore, because Officers Perez and Giambalvo had probable cause for either one or both of the offenses charged, the Surfside is entitled to summary judgment on Plaintiffs' state law claims for false arrest and false imprisonment/detention brought in Count II.

**F. Plaintiff's Section 1983 Claims Fail Against Surfside because of the Lack of an Underlying Constitutional Violation and the Lack of Evidence That An Official Custom or Policy Was the Moving Force Behind Any Purported Deprivation**

■ It is well established that even when individual town officers are entitled to qualified immunity, a town might still be liable if a plaintiff can demonstrate that the town had a policy or custom that led to a constitutional deprivation. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983."). However, I must make this inquiry only when a plaintiff has suffered a constitutional deprivation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (determining that the extent to which departmental regulations infringe on constitutional rights is irrelevant when no constitutional injury, in fact, occurred). As discussed above in this case, I have concluded that Plaintiff suffered no constitutional deprivation. Thus, I conclude that the Surfside is entitled to Summary Judgment on Plaintiffs' constitutional claims brought pursuant to § 1983 contained in Count IV.

■ Even if I were to assume that Plaintiff suffered a constitutional deprivation, I would have reached the same result because Plaintiff has not produced evidence that Surfside had a policy or custom that caused his constitutional deprivation. In reaching this conclusion, I examined the specific allegations contained in Count IV of the Second Amended Complaint.

In relevant part Count IV, Plaintiff alleges:

23. Specifically, [Perez] knowingly fabricated witness statements, failed to preserve exculpatory evidence such as the stop sign, failed to preserve witness names who could exculpate plaintiff in

---

19. At oral argument, counsel for Plaintiff did not present any argument in support of either a substantive due process violation or the equal protection violations.

having plaintiff arrested for the alleged offense of damaging public property, viz, the bus stop sign.

24. [Perez] fabricated this charge because of a custom and policy that existed in [Surfside] wherein citizens such as plaintiff were harassed by police officers without cause based on their nonconformist and "hippie-like" appearance, all for the purpose of depriving plaintiff of his substantive due process rights to be free from unlawful infringement from unreasonable seizure by police authorities. This Surfside policy of infringing on the rights of citizens such as plaintiff took on the form of policemen "staring down" citizens as a form of intimidation, fabricating witnesses and evidence, and knowingly and purposefully failing to preserve evidence that would exculpate accused citizens such as plaintiff. [Perez] "stared down" plaintiff before causing [Giambalvo] and other Surfside officers to arrest plaintiff from the bus.

25. [Giambalvo] fabricated the charges of unlawful possession of cannabis by failing to provide evidence that would exculpate accused citizens such as plaintiff, such as witnesses on the bus who observed plaintiff's actions, thereby depriving plaintiff of his substantive due process rights to be free from unlawful arrest.[20]

▮▮▮ While it is well established that while a municipality can be sued in a § 1983 action, the municipality cannot be sued on a theory of *respondeat superior* for the injuries caused by its employees. *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipality is only liable under § 1983 if its own "policy or custom," when executed by its officials, caused the constitutional violation. *Id.* There are also limited circumstances when a municipality may be held liable under § 1983 on the theory of "failure to train" its police officers. *See City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Judge Daniel T.K. Hurley in *Sherrod v. Palm Beach County School District,* 424 F.Supp.2d 1341, 1344 (S.D.Fla.2006) correctly summarized the law regarding municipal liability when he stated:

As case law has developed, local governmental entities have been found liable under § 1983 for constitutional deprivations where the plaintiff proved that (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, or (2) the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, or (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, or (4) the policymakers of a local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate or employee.

▮▮▮ To the extent that Plaintiff seek to bring claims against Surfside pursuant to 42 U.S.C. § 1983, they must overcome the "strict limitations on municipal liability" which the United States Supreme Court has put in place. *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998). According to the Eleventh Circuit in *Gold,* "[A] municipality may be held liable for

**20.** Plaintiff did not counter Surfside's arguments in its Motion for Summary Judgment with regard to the allegations that Officers Perez and Giambalvo fabricated evidence. Thus, I conclude that Plaintiff abandoned the fabrication allegations contained in Count IV.

the actions of a police officer only when a municipal 'official policy' causes a constitutional violation." *Id.* at 1350. A burden is, therefore, placed on the plaintiff who seeks to hold a municipality liable pursuant to § 1983 to "identify a municipal 'policy' or 'custom' that caused his injury." *Id.* A municipality may only be held liable under § 1983 "when 'the execution of the government's policy or custom.... inflicts injury.'" *Id.* Put another way, a plaintiff seeking to recover pursuant to § 1983 from a municipality must demonstrate that the official policy or custom was the "moving force of the constitutional violation." *See e.g., City of Oklahoma City v. Tuttle,* 471 U.S. 808, 831, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Thus, at the very least, a plaintiff must identify a municipal policy and then demonstrate an affirmative link between the policy and the particular violation alleged. *Griffin v. City of Clanton, Ala.,* 932 F.Supp. 1359, 1370 (M.D.Ala. 1996).

The necessary causal connection can be established "when a history of

widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so." *Braddy v. Fla. Dept. of Labor & Employment,* 133 F.3d 797, 802 (11 Cir. 1998). Alternatively, the casual connection may be established when a municipality's "custom or policy .... result[s] in deliberate indifference to constitutional rights" or when facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11 Cir.2003).[21]

In his Second Amended Complaint, Plaintiff seeks to predicate a custom and policy claim upon his belief that Surfside police officers engaged in "staring down" or giving dirty looks to citizens. The Second Amended Complaint also alleges that Officer Perez's failure to investigate the crimes for which he was arrested deprived Plaintiff of exculpatory evidence and that this practice was a policy and practice of Surfside.[22]

---

**21.** Put another way, the necessary causal connection if it:

can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he [she] fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences.

*Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990).

**22.** On this point in his Response to Surfside's Motion for Summary Judgment, Plaintiff states in relevant part:

The problem certainly arises in this case as to whether the municipality, [Surfside], had a custom or policy of "staring down" perceived vagrants such as Mr. Whittington, and arresting them. Certainly, if Officer

Perez didn't even witness this misdemeanor, his arrest was unlawful. The fact that not one witness sought to thereafter prosecute [Plaintiff] would lead one to conclude that his arrest was seemingly unlawful from its inception. In other words, that the sole reason for his arrest was to harass him from coming to [Surfside.]

Further, because of its policy to stare down perceived vagrants that it did not like, it was this custom that caused [Plaintiff] to deprived of his Constitutional Rights to be free from unreasonable seizure. *McDowell v. Brown,* 392 F.3d 1283 (11th Cir.2004). If [Surfside] had properly supervised Officer Perez and/or Officer Giambalvo, no false evidence would have been utilized against [Plaintiff] as a pretext for his arrest, and that [Plaintiff's] rights to have witnesses who could exculpate him would have been supported.

. . .

As a preliminary matter, I conclude that Plaintiff appears to improperly attempt to hold Surfside liable under a theory of *respondent superior* simply because Officers Perez and Giambalvo were employed by Surfside. However as discussed above, it is well-established that Surfside cannot be held liable under a *respondent superior* theory of liability.

Additionally, Plaintiff has not submitted any evidence to substantiate his allegations that Surfside had a policy or practice that resulted in his constitutional injury. The only evidence in the record produced by Plaintiff that Surfside had a policy of "staring at" people comes from the deposition of former Chief Shawn O'Reilly who testified that he was aware that a single officer might have engaged in this sort of behavior after Plaintiff's incident. On this point, Surfside contends:

> These references to post-incident "starring down" (something which is not even unconstitutional if it occurred) and trying to somehow equate them with [the] officers supposedly conducting an inferior probable cause investigation, or an officer using unnecessary force, are simply incongruent and do not establish the existence of an unconstitutional custom or policy of Surfside).

(Reply Brief in Support of Surfside's Motion for Summary Judgment, 10).

I agree. No federal court that I am aware of has ever found that staring at people or giving them dirty looks runs afoul of the Fourth Amendment which addresses unconstitutional searches and seizures. Even if it is true that a single officer was reported to have given an individual a "dirty look" or "stared down" citizens, Chief Shawn O'Reilly's testimony only establishes that some officer other than the officers involved in this matter have allegedly gave some people dirty looks or "stared down" another individual. However, such evidence does not prove that Surfside has a custom or policy that caused Plaintiff's constitutional violations in this case. Furthermore even if this one incident occurred as Plaintiff alleges, the single incident does not demonstrate that Surfside had a wide spread history of abuse or that Plaintiff has demonstrated the Surfside displays deliberate indifference to its citizens' rights necessary to hold it liable.

■ Additionally, I conclude that there was no reason for Officer Perez to have detained the bus and obtained the names, addresses, and statements of all of the people on the bus given the facts of this case because of the nature of the offenses Plaintiff was arrested for. While Plaintiff's arrest might have had serious implications for this individual plaintiff, the crimes for which he was arrested were not serious crimes warranting a "mini-trial" roadside or the full scale investigation requested by his counsel. Furthermore, failing to document every possible eyewitness to an alleged criminal offense does not violate the Constitution nor has Plaintiff

---

Here [Plaintiff] believes that because of his particular physical appearance of having long hair, ponytail, being in his 40s, wearing shorts, that he was certainly unwelcome in [Surfside]. As Such, Officer Perez stared him down and had every opportunity to arrest him or confront him at the bus stop. Accordingly, [Plaintiff] seeks to identify a policy where police are indifferent to the rights of certain citizens, those that they consider undesirable or unwelcome, and as a result, those citizens are subject to false arrest and fabrication of evidence which they supposedly had on their possession. (Plaintiff's Response to Motion for Summary Judgment, 7–8).

produced evidence that it was Surfside's policy or practice not to investigate crimes before arresting individuals. Thus, I conclude that Plaintiff has not produced sufficient evidence to meet the rigors of imposing municipal liability on Surfside, even assuming a constitutional violation. Therefore, the § 1983 claims contained in Count IV based upon any alleged Fourth Amendment violation brought against Surfside are DISMISSED.

### V. Plaintiff's Discovery Motion [DE # 82] is Both Untimely and the Evidence Sought By Such Motion Will Not Lead to Relevant Evidence Because I Have Concluded that No Constitutional Violation Occurred

On May 17, 2007 which was the evening before oral argument on the pending Motions for Summary Judgment, Plaintiff filed a Motion for Discovery [**DE # 82**]. In the Motion, Plaintiff sought to depose Murray Maeisae and Surfside's Mayor and Town Manager. However, discovery in this matter concluded in December 2006 and the Motions for Summary Judgment have been pending since February 2007. Mayor Burkett was deposed on March 15, 2007.

Having reviewed the Motion, I conclude that it is not appropriate to reopen discovery at this point in the litigation. In reaching this conclusion, I note that Plaintiff's request is both untimely and will not lead to relevant evidence. First, the time for conducting discovery in this matter as provided in the Scheduling Report has long passed. If Plaintiff wished to investigate the facts that arose during the deposition of Mayor Burkett or other depositions, or if Plaintiff sought to reopen discovery, he could have and should have filed an appropriate Motion prior to the

eve of oral argument on Motions for Summary Judgment that have been pending for months. Moreover, Plaintiff stated that he needed time to investigate the alleged policy of "staring down" citizens. However as I already stated, under existing law Surfside cannot be held liable under the Fourth Amendment for "staring down" individuals as alleged in the Second Amended Complaint. Furthermore, I have concluded that no constitutional violation occurred in this case, therefore, I conclude that any evidence Plaintiff seeks to obtain via additional discovery would not make a difference in the ultimate result in this case, i.e., the dismissal of the § 1983 claims against Surfside. Thus, I conclude Plaintiff's Motion for Discovery is DENIED [**DE # 82**].

### VI. Conclusion

For the above reasons,

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Surfside's Motion for Summary Judgment is GRANTED [**DE # 55**] in its entirety.

2. Officers Giambalvo and Perez's Motion for Summary Judgment is GRANTED [**DE # 57**] in its entirety.

3. All other pending Motions including Surfside's Motion in Limine [**DE # 74**] are DISMISSED as moot. All pending dates are CANCELLED.

4. The Clerk of Court is directed to enter FINAL JUDGMENT against Plaintiff. It is ORDERED that Plaintiff shall take nothing, that the action is DISMISSED on the merits and JUDGMENT be entered for the Defendants.

5. I reserve jurisdiction over this matter to entertain any potential Motions for

attorneys fees and/or costs filed by Defendants.

6. Plaintiff's Motion for Discovery [**DE # 83**] is DENIED.