**Richard MARX, individually, and Kristina Marx, a minor, Plaintiffs–Appellants,**

v.

**Glenn H. GUMBINNER, Robert Timmann and Kelly Vaughn, Defendants–Appellees,**

**Martin County Sheriff's Dept., et al., Defendants.**

No. 89–5594.

United States Court of Appeals, Eleventh Circuit.

July 13, 1990.

Richard J. Troy, Chicago, Ill., for plaintiffs-appellants.

Keith C. Tischler, Julius F. Parker, Jr., Parker, Skelding Labasky & Corry, Tallahassee, Fla., for defendants-appellees.

Before CLARK and EDMONDSON, Circuit Judges, and RUBIN *, Senior Circuit Judge.

EDMONDSON, Circuit Judge:

This is the second appeal involving a lawsuit filed by Richard Marx against two Florida state attorneys and three deputies of the Martin County, Florida, Sheriff's Department. Defendant deputies, after discussing the existence of probable cause with a state attorney, arrested Marx for allegedly sexually assaulting his then four-year-old daughter, Kristina. About a month after the arrest, blood tests proved that Marx was not the rapist; and the state attorney's office dropped the charges. Marx brought a section 1983[1] action on behalf of himself and Kristina, claiming that his arrest was wrongful and illegal under the fourth and fourteenth amendments and that defendants willfully and maliciously violated his constitutional rights.

The district court denied the state attorneys' motions for dismissal and for summary judgment. On interlocutory appeal, this court dismissed some of Marx's claims against the state attorneys and remanded. *Marx v. Gumbinner*, 855 F.2d 783 (11th Cir.1988). Marx settled the claims outstanding against the attorneys.

The defendant deputies then renewed their motion for summary judgment, which had been deferred pending resolution of the interlocutory appeal involving the state attorneys. The district court granted the deputies' motion on the grounds that the officers had probable cause to arrest Marx and, even if probable cause did not exist, the officers were protected from damages claims by the doctrine of qualified immunity. 716 F.Supp. 1434. We affirm the grant of summary judgment on the ground that defendants had probable cause to arrest Marx and to take him into custody for questioning.[2]

## FACTS

Marx and Kristina were spending the night at the home of Marx's girlfriend, Claire Leonard. Marx found Kristina around 5:00 in the morning standing outside the back door of Leonard's home. Kristina had been raped and was covered with blood and mud. Marx began to clean Kristina while Leonard called the police and for an ambulance to take Marx and Kristina to the hospital.

Investigators at the Leonard home discovered several items of Leonard's personal property along with a child's underpants in a muddy ravine about fifty yards from the patio door. Leonard said the items had

---

* Honorable Alvin B. Rubin, U.S. Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

1. 42 U.S.C. § 1983 (1988), says in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. Because this appeal involves only claims against the three law enforcement officers, references hereinafter to "defendants" refers to only those individuals. Also, because we affirm summary judgment for all three officers, we make no distinctions between the officers when discussing the events of Marx's arrest.

been in the bedroom where Kristina had been sleeping. The officers found no evidence of forced entry into the house; and, because the screen door opening onto the patio would not lock, officers assumed that an intruder would have entered through that door. A police dog located the crime scene and appeared to follow a scent between the crime scene, the house, and a road in back of Leonard's house; but the scent evidence was not strong.

Meanwhile, emergency room personnel treated Kristina. She was severely injured, and detectives at the hospital were prevented from interviewing her immediately. The doctor who first treated Kristina told detectives after making an initial examination that, when asked how she got mud in her mouth, Kristina said "Daddy did this to me," and "Daddy left me outside to sleep outside in my nightgown, and he did this to me." Marx, who was not allowed in the treatment room, telephoned a friend, Ann Allen Sarno, who was a nurse. She came to the hospital and offered to talk to Kristina. Detectives told Sarno to report to them only what Kristina volunteered. After talking to Kristina, Sarno told detectives that Kristina said "a bad man took me outside." When detectives told Sarno about Kristina's statements implicating Marx, Sarno said she was not surprised. Sarno told detectives that Marx frequented topless bars and that he had alcohol abuse problems and financial difficulties.

While at the hospital, detectives interviewed Marx. Marx told them that he was generally a light sleeper and awoke whenever he heard noises from Kristina's room. Marx said that, on the night of the assault, he and Leonard were sleeping on the living room floor about ten feet from the patio door, suggesting that an intruder would have had to walk almost directly over them to reach Kristina's bedroom. Marx also told detectives that when he found Kristina she said, "Daddy, why did you leave me to sleep outside all night." Detectives then, about 8:00 a.m., asked Marx to accompany them to the sheriff's office for further questioning.

At the sheriff's office, Marx received a *Miranda* warning and gave defendants a statement. When asked why Kristina apparently identified Marx as the rapist, Marx said: "Well whoever left her probably got up and left. Maybe she knew I left her and came back in the house and left her out there." Marx also said that he hoped Kristina would not remember the incident.

Defendants then spoke with a state attorney who, after discussing the case with her supervisor, advised defendants to question Kristina and to ask Marx to take a polygraph exam before deciding whether to arrest Marx. After talking to his attorney, Marx volunteered to take the polygraph test. The polygraph examiner concluded that Marx probably was untruthful in his responses to questions about the rape and about taking Leonard's personal items. After learning of the test results, but without personally interviewing Kristina—who was then undergoing surgery—defendants again talked with the prosecutor. The state attorney advised defendants that they had probable cause to arrest Marx, and defendants formally arrested Marx at about 5:00 p.m. The next day, the state court held a probable cause hearing and concluded that probable cause existed for Marx's arrest. On the advice of counsel, Marx refused to submit to blood and saliva tests. Several weeks later, in compliance with a court order, Marx submitted to a blood test which showed that he could not have been the rapist. The state then dropped all charges against Marx.

## DISCUSSION

A warrantless arrest without probable cause violates the Constitution and forms the basis for a section 1983 claim. *See Herren v. Bowyer,* 850 F.2d 1543, 1547 (11th Cir.1988); *Reeves v. City of Jackson, Miss.,* 608 F.2d 644, 651 (5th Cir.1979).[3] The existence of probable

---

3. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*), this court adopted as precedent as decisions of the former

cause, however, is an absolute bar to a section 1983 action for false arrest. *Howell v. Tanner*, 650 F.2d 610, 614 (5th Cir. Unit B 1981);[4] *Williams v. Kobel*, 789 F.2d 463, 470 (7th Cir.1986). "Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949) (brackets in original) (citing *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925)); *Wilson v. Attaway*, 757 F.2d 1227, 1235 (11th Cir. 1985). Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information," *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964), and probable cause "must be judged not with clinical detachment but with a common sense view to the realities of normal life." *Wilson*, 757 F.2d at 1235. When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate. *See White v. Pierce County*, 797 F.2d 812, 815 (9th Cir. 1986); *Wille v. Raymond*, 487 So.2d 1211, 1214 (Fla.App.1986).

▉ Marx argues that probable cause did not exist either when defendants took him to the sheriff's department for questioning at 8:00 a.m. or when defendants formally arrested him at 5:00 p.m. Assuming that the 8:00 a.m. detention for questioning required probable cause to arrest,[5] we hold that probable cause existed at 8:00 a.m. and was even stronger by 5:00 p.m. when defendants formally arrested Marx.

When defendants detained Marx, they knew that Kristina, the victim, had said "Daddy did this to me," and "Daddy left me outside to sleep outside in my nightgown, and he did this to me." Even though these statements were made by an injured and likely traumatized four-year-old, defendants acted properly in placing a reasonable amount of trust in the truth of Kristina's statements. In *Easton v. City of Boulder, Colo.*, 776 F.2d 1441, 1449 (10th Cir.1985), the Tenth Circuit said that considering the statements of child sexual abuse victims to be inherently suspect is "an entirely unacceptable point of view." In *Easton*, the court upheld a finding of probable cause to arrest a suspected child molester solely on the basis of statements made by the alleged victims, one younger than six years old and the other younger than four, even where all charges of molestation were eventually dropped. We need not go as far as the *Easton* court, and we will not say that Kristina's statements should not have been viewed with some—perhaps a great deal of—skepticism, given her age, her injuries, and her likely state of mind. But we believe that Kristina's statements could not be disregarded and that her statements supported defendants' conclusion that probable cause existed. *Accord Myers v. Morris*, 810 F.2d 1437, 1456–57 (8th Cir.1987) (in determining existence of probable cause, officers entitled to rely on statements made by children aged five to twelve as well as statements made by adults).

Under Florida law, defendants may have had no legal obligation to corroborate Kristina's statements. Marx was charged with violating Fla.Stat. § 794.011(2) (West 1976), which makes it a felony to commit a sexual battery upon a person less than twelve years old. In addition, "[t]he testimony of the victim need not be corroborated in a prosecution under s. 794.011." Fla.Stat. § 794.022(1) (West Supp.1990). *See also Myers*, 810 F.2d at 1456 (discussing similar Minnesota statute). We find no

---

Fifth Circuit Court of Appeals decided prior to October 1, 1981.

4. In *Stein v. Reynolds, Inc.*, 667 F.2d 33, 34 (11th Cir.1982), this court adopted as precedent all decisions of Unit B of the former Fifth Circuit.

5. Although we need not decide the point, we recognize that something less than probable cause to arrest might legally justify the detention for questioning. For background, see *Barts v. Joyner*, 865 F.2d 1187 (11th Cir.), *cert. denied*, ─ U.S. ─, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989).

Florida case applying section 794.022(1) to similar facts, but we need not decide whether the uncorroborated statements of a four-year-old rape victim would constitute probable cause: when defendants detained Marx, they had other significant evidence tending to incriminate him.

Because defendants found no signs of forced entry into the Leonard house, they concluded that, if an intruder entered the house that night, entry was made through an unsecured screen door which opened into the room where Marx and Leonard were sleeping. Coupled with Marx's statement that he was a light sleeper, this fact presented defendants with the implausible theory that an intruder would have had to walk almost directly over Marx to get to Kristina. In addition, the police dog was unable to follow a scent away from the crime scene conclusively. By the time defendants formally arrested Marx, they also knew that Marx's polygraph test results showed that Marx probably was untruthful when he denied raping Kristina, and defendants had Marx's statement—made in response to questioning about why Kristina would implicate him—that Kristina "knew [he] left her and came back in the house and left her out there." [6]

■ That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself. *See Trivette v. State,* 244 So.2d 173, 175 (Fla.App.1971); *Brown v. State,* 91 So.2d 175, 177 (Fla.1956); *see also Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released."). As Judge Learned Hand wrote, "the 'reasonable cause' necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties." *United States v. Heitner,* 149 F.2d 105, 106 (2d Cir.1945) (quoted in *Draper v. United States,* 358 U.S. 307, 311 n. 4, 79 S.Ct. 329, 332 n. 4, 3 L.Ed.2d 327 (1959)).

"Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar,* 338 U.S. at 176, 69 S.Ct. at 1311. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 175, 69 S.Ct. at 1310. We hold that, based on the information known to defendants at the pertinent times, probable cause existed to detain Marx for questioning and to arrest Marx.

AFFIRMED.

---

**6.** Although Leonard's report that her home had been burglarized and defendants' finding some stolen items at the crime scene could indicate that someone other than Marx was the rapist, defendants were under no obligation to give credence to this theory. *See Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988). Defendants also were not required to forego arresting Marx based on initially discovered facts showing probable cause simply because Marx offered a different explanation. *See id.*

In response to defendants' motion for summary judgment, Marx offered the affidavit of an expert in police procedure who opined that defendants arrested Marx without probable cause. Opinion evidence about legal conclusions, however, does not create an issue of fact sufficient to defeat summary judgment. *See Wille,* 487 So.2d at 1214 ("what facts and circumstances amount to probable cause is a pure question of law, while whether they exist in a given case is a question of a fact"). The facts in this case are not disputed. Thus, the district court knew *what defendants did;* and *the court had a duty to decide,* based on the facts and drawing any necessary inferences in favor of Marx, whether probable cause existed.