Alphonse MILLS, Plaintiff,

v.

TOWN OF DAVIE, a Florida municipal corporation, and Chris Butler, individually, and as a police officer for the Town of Davie, Defendants.

No. 98–6561–Civ.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

May 6, 1999.

Edward McGee, Jr., McGee Gainey & Huskey, Fort Lauderdale, FL, for plaintiff.

Richard Hunt McDuff, Johnson, Anselmo, Murdoch, Burke & George, Ft. Lauderdale, FL, for defendants.

## ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (filed March 24, 1999, DE # 28). Response and Reply have been filed.

### I. Background

The relevant facts are undisputed. On June 28, 1994, at approximately 12:40 A.M., an individual forced his way into a McDonald's restaurant in the town of Davie, Florida. The robber pointed a gun at Kelly Balch, one of three employees at the restaurant, and told her to open the store safe. During the robbery, Ms. Balch observed the robber "eyeball to eyeball." [1] After the robber took several pouches of money and left the restaurant, Ms. Balch

1. See Dep. of Kelly Balch at 35 (dated Nov. 6, 1998) (filed March 24, 1999) (hereinafter    "Balch Dep. II").

and other employees called the police. One of the first officers to arrive was Defendant Officer Chris Butler, who was on road patrol with the Davie Police Department.[2] He arrived within minutes of the initial call.[3] He spoke with Ms. Balch, who described the suspect as a "[b]lack male, approximately 5 foot 9 inches, weighing approximately 150 or 155 pounds, wearing long black pants."[4] Ms. Balch further described the suspect as "wearing white socks on his hands, a yellow shirt on his face ... [and] a black [Florida] Marlin's hat."[5] At that point, Officer Butler reported this description by radio to other police units that were responding to the call. Numerous other police units soon arrived, and began setting up a search perimeter in the area around the restaurant.

At about the same time, K–9 Officer Greg Mize arrived at the McDonald's restaurant. His dog picked up a scent, and Officer Mize followed on foot. The dog followed the scent west along Griffin Road, an east-west road running just south of the restaurant. Approximately sixty yards along Griffin Road, in the middle of the median, Officer Mize found a yellow shirt, white socks, and a baseball cap.[6] According to Officer Mize, the dog's tracking pattern indicated that the suspect was still within the area of the police perimeter.[7]

Shortly thereafter, Plaintiff and a companion were stopped by police officers as they were walking southbound on State Road 7, a north-south road intersecting Griffin Road.[8] Officer Butler joined these officers, saw Plaintiff, and returned to the restaurant. At the restaurant, Officer Butler told the witnesses that there was a suspect, and asked whether any of them could identify him. Ms. Balch volunteered, and was taken in the back seat of Officer Butler's patrol car to where Plaintiff and his companion were being held on State Road 7.[9] Officer Butler shined his spotlight on Plaintiff, and Ms. Balch identified him as the person who had robbed the restaurant.[10] At no time did she express any doubt as to Plaintiff's identity, even going so far as to later describe herself as "100 percent positive" about it, even though Plaintiff was apparently not dressed in the same manner as the robbery suspect.[11]

Plaintiff was taken into custody. Officer Butler prepared a Probable Cause Affidavit. In July 1994, the State Attorney's Office charged Plaintiff with armed burglary, armed robbery, and two counts of aggravated assault. Plaintiff was held in custody for approximately five and a half months due to his inability to post bail. Finally, in March 1995, the State Attorney's Office announced a *nolle prosequi* on all charges.

Plaintiff filed a Complaint in state court, bringing claims against Defendant Town of Davie for false arrest under state law, and against Defendant Officer Chris Butler for false arrest under 42 U.S.C. § 1983. Defendants removed the case to federal court in May 1998. Defendants now move for summary judgment on all counts, arguing that there was probable cause to arrest Plaintiff. The Court now turns to this argument.

**2.** *See* Dep. of Officer Chris Butler at 38 (filed March 24, 1999) (hereinafter "Butler Dep.").

**3.** *See id.* at 41; Dep. of Kelly Balch at 7 (dated Sept. 23, 1994) (filed March 24, 1999) (hereinafter "Balch Dep. I.").

**4.** *See* Butler Dep. at 45.

**5.** *See id.*

**6.** *See* Dep. of Office Greg Mize at 5–7 (filed March 24, 1999) (hereinafter "Mize Dep.").

**7.** *See id.* at 28.

**8.** *See* Butler Dep. at 89.

**9.** *See id.* at 97–98.

**10.** *See* Balch Dep. I at 20–21, 23–24; Balch Dep. II at 33–35, 111 ("That's him, he is the one.").

**11.** *See* Balch Dep. I at 25–26.

*II. Discussion*

■■ Probable cause is an absolute bar to claims for false arrest under state law and Section 1983.[12] In undertaking a probable cause analysis, courts are to look at whether "the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been ... committed."[13] Courts are to look at whether the arrest was "objectively reasonable under the totality of the circumstances."[14] The same probable cause analysis applies to false arrest claims under state law and Section 1983, since federal and state standards for determining the existence of probable cause are identical.[15]

■ It is important to note at this point that the level of certainty necessary for a finding of probable cause is much lower than that needed for a conviction on the underlying crime. As one court has commented, "officers [a]re not required to conduct a mini-trial before arrest[ ]."[16] An officer need not have "convincing proof at the time of the arrest,"[17] and courts should be wary of scrutinizing the circumstances of the arrest through the 20/20 hindsight that comes after charges are dropped or the suspect is acquitted.[18] "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part."[19]

Based on the arguments of the parties, the task of determining whether Officer Butler had probable cause to arrest of Plaintiff revolves around two core issues: (1) whether Ms. Balch's "show-up" identification was reasonably reliable;[20] and (2) whether the facts and circumstances regarding possible inconsistencies between Plaintiff's appearance and the reported appearance of the robbery suspect, as well as other circumstantial inconsistencies, would have caused a reasonable person to discount Ms. Balch's identification. The relevant facts in this action are not disputed,[21] and are essentially as stated in Section I of this Order. "When the facts are not in dispute, whether probable cause existed is a question of law, and summary judgment is appropriate."[22] The Court finds that Ms. Balch's show-up identification was in fact reasonably trustworthy, and the circumstantial inconsistencies were not sufficiently clear or serious enough to require Officer Butler to discount Ms. Balch's identification. The Court therefore holds that Plaintiff's arrest was objectively reasonable in light of the totality of the circumstances surrounding Plaintiff's arrest, and summary judgment must be granted in favor of both Defendants.

---

**12.** *See Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir.1998).

**13.** *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir.1990) (citations and brackets omitted).

**14.** *Rankin*, 133 F.3d at 1435 (citations omitted).

**15.** *See id.* at 1434.

**16.** *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1264 (8th Cir.1996).

**17.** *See Rankin*, 133 F.3d at 1435 (citations omitted).

**18.** *See Marx*, 905 F.2d at 1507 ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself.") (citations omitted).

**19.** *See id.* at 1507 (citation omitted).

**20.** In a "show-up," a witness is asked to identify one suspect.

**21.** Plaintiff argues that summary judgment is inappropriate because the relevant facts are in dispute. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 10. However, Plaintiff fails to identify those points of dispute, and the Court finds, based on a review of the pleadings submitted, that the parties are in accord as to the facts relevant to this action.

**22.** *Marx*, 905 F.2d at 1506 (citations omitted).

## A. Reliability of Show-up Identification

Plaintiff attacks the reliability of Ms. Balch's identification on the grounds that the show-up procedure was "suggestive and biased." [23] Plaintiff essentially argues that Officer Butler should not have relied on the identification because Plaintiff was the only African–American presented for identification, and because he was presented to Ms. Balch in a "guilty" context, i.e., a spotlight was shined upon him as he was handcuffed and surrounded by police. [24] This argument is misplaced. The issue and doctrine of suggestiveness in the context of suspect identification is a matter of evidentiary law, and goes to the admissibility of the identification in a trial on the underlying charge; it does not have a direct bearing on a probable cause inquiry. [25]

Nevertheless, the framework for analyzing the admissibility of show-up identification evidence can be useful in assessing its reliability for the purposes of a probable cause determination. As discussed by the Supreme Court in *Neil v. Biggers*, [26] a show-up may very well be unnecessarily suggestive. Nevertheless, it is reliable enough to justify admission at trial if there was no great risk of misidentification, [27] with the likelihood of misidentification turning on five factors: (1) the opportunity of the witness to view the criminal; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. [28] This framework can be used to obtain some indicia of reliability from Officer Butler's perspective as to Ms. Balch's show-up identification for the purposes of determining probable cause.

On the night of the robbery, Officer Butler knew that Ms. Balch had observed the robber well enough to describe his physical characteristics, such as race, height, weight, and clothes. [29] Officer Butler knew, or was justified in presuming, that Ms. Balch had paid very close attention from the fact that she had been the victim of the robbery, not a mere onlooker. [30] Officer Butler could tell that Plaintiff more-or-less matched Ms. Balch's earlier description of the robber. Ms. Balch had described the robber as a "[b]lack male, approximately 5 foot 9 inches, weighing approximately 150 or 155 pounds, wearing long black pants . . ., white socks on his hands, a yellow shirt on his face . . . [and] a black [Florida] Marlin's hat." [31] Plaintiff matched that description as to race, sex, height and weight. He was wearing different clothes; however, the robber's clothes had been found discarded nearby and it would not have been unreasonable for Officer Butler to assume that the robber had changed his clothes at some point after the robbery. Ms. Balch had expressed no uncertainty at the identification, even exclaiming to Officer Butler, "That's him, he is the one." [32] Finally, no more than an hour or two had passed between the robbery and the show-up. [33] Other courts have routinely held that such facts are sufficient to meet the five *Neil* factors for reliability. [34] The Court there-

---

23. Pl.'s Compl. at 3.

24. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. at 4.

25. *See, e.g., Perez v. State of Florida,* 648 So.2d 715, 719 (Fla.1995).

26. 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

27. *See id.* at 199, 93 S.Ct. 375.

28. *See id.* at 199–200, 93 S.Ct. 375.

29. *See* Butler Dep. at 45.

30. *See* Balch Dep. I at 27–28.

31. Butler·Dep. at 45.

32. Balch Dep. II at 111.

33. *See* Butler Dep. at 92.

34. *See, e.g., Neil,* 409 U.S. at 200, 93 S.Ct. 375; *Johnson v. Dugger,* 817 F.2d 726, 729 (11th Cir.1987); *Jones v. Smith,* 772 F.2d 668,

**1382**

fore finds that an application of the *Neil* factors to the undisputed facts of this case shows that Ms. Balch's show-up identification constituted reasonably trustworthy information on which to base Plaintiff's arrest.

### B. Other Facts and Circumstances Regarding Plaintiff

■ Plaintiff also argues that Officer Butler lacked probable cause to arrest, regardless of the reliability of Ms. Balch's identification, because various other facts and circumstances indicated that Plaintiff could not have been the robber. Plaintiff points to the fact that: (1) while the baseball cap, shirt, and socks used in the robbery were recovered, other objects from the robbery, including the gun, the bags of money, and other items of clothing, were not found on Plaintiff or in his car; (2) Plaintiff's car did not match a car that had been seen near the restaurant shortly before the robbery; (3) when Ms. Balch described the robber to Officer Butler, she did not mention items that were on Plaintiff, such as his tattoos and jewelry; (4) the robber acted alone, whereas Plaintiff was accompanied by a friend; and (5) Plaintiff was arrested at a location that Plaintiff argues does not comport with the robber's movements as tracked by Officer Mize and his dog.

The Court is singularly unpersuaded by this line of argument. The Court accepts as undisputed the various facts relied on by Plaintiff. Nevertheless, while these facts might have created some doubt in the context of obtaining a conviction against Plaintiff, they are not so conclusive as to void Officer Butler's reliance on Ms. Balch's identification. Plaintiff attempts to weave these facts into one interpretation of what transpired that night, and

argues that Officer Butler should have investigated all of the little inconsistencies. However, Plaintiff has offered no case law to support the proposition that the officers should not have arrested Plaintiff until they had investigated critical inconsistencies such as the fact that the robber was wearing "long black pants," [35] whereas Plaintiff was wearing "black jeans." [36] Indeed, the case law suggests that law enforcement authorities need not take "every conceivable step ... at whatever cost, to eliminate the possibility of convicting an innocent person," [37] nor do they need to "investigate independently every claim of innocence." [38] The fact of the matter is that police officers making arrests "deal with probabilities," [39] and the salient facts that were known to Officer Butler suggested that it was more probable that Plaintiff was the robber. The Court therefore holds that Officer Butler had probable cause to arrest Plaintiff, and summary judgment must be granted in favor of Defendants.

### III. Conclusion

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (filed March 24, 1999, DE # 28) be, and the same is hereby, GRANTED.

---

671 (11th Cir.1985); *Meyer v. Estelle,* 621 F.2d 769, 774 (5th Cir.1980); *United States v. Michael,* 729 F.Supp. 95, 96 (S.D.Fla.1989).

**35.** Butler Dep. at 45.

**36.** Pl.'s Dep. at 61 (filed March 24, 1999).

**37.** *Rankin,* 133 F.3d at 1436 (citations omitted).

**38.** *Id.* (citation omitted).

**39.** *See Marx,* 905 F.2d at 1507.