[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14001
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-01440-WSD


RAY HUNTER,

                                                    Plaintiff-Appellant,

versus

D. G. SCHOEPPNER,

                                                    Defendant-Appellee.



_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(March 19, 2014)

Before HULL, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

Ray Hunter appeals the summary judgment in favor of Detective D.G. Schoeppner and against Hunter's complaint of malicious prosecution. 42 U.S.C. § 1983. The district court ruled that Schoeppner had probable cause to arrest Hunter, which barred his complaint of malicious prosecution. We affirm.

Schoeppner, a detective of the DeKalb County Police Department, investigated the robberies of local branches of Emory Federal Credit Union and BB&T Bank. The robberies were committed by black men of approximately the same height, weight, and age. On both occasions, a robber handed a teller a note that had been written on a Bank of America check, which warned of explosives and demanded $35,000, and the robber showed the teller a device with a light. The robber left the check at the bank and, although identifying information had been blotted out, Schoeppner was able to see that the account holder was "DBA Mattress & Furniture City, Ray Hunter, Sole Prop 404-288-5020, 1945 Candler Rd." During his investigation, Schoeppner learned that two robberies had been committed in the City of Atlanta that were similar to those in DeKalb County; the suspect was approximately the same size and age; and a check left at one of the robberies in Atlanta was issued for Hunter's business account. Schoeppner also learned that Hunter's business was no longer in existence. Schoeppner compared a photograph of Hunter to surveillance videos obtained from Emory and BB&T and, although the videotapes were not of sufficient quality to make a positive

2

identification, Schoeppner determined that the suspect in both videos appeared to be the same person and resembled Hunter.

Schoeppner created a photographic array containing Hunter's photograph and showed the array to three employees of BB&T and one employee of Emory. One employee of BB&T and the employee of Emory "tentatively" identified Hunter as the robber; the second employee of BB&T did not select anyone from the array; and the teller who was robbed at BB&T "tentatively" identified someone other than Hunter. When a witness was not one hundred percent confident in his or her identification, Schoeppner treated the identification as "tentative."

Schoeppner obtained warrants to arrest Hunter. Schoeppner alleged in his affidavits that Hunter had stolen money from tellers at the credit union and the bank using an explosive device. A magistrate judge issued the arrest warrants based on the affidavits "and other sworn or affirmed testimony establishing probable cause for [Hunter's] arrest." Schoeppner did not execute the warrants.

Two months later, Schoeppner learned that Charles Hamlett had been arrested for the two robberies in the City of Atlanta. Officers arrested Hamlett based on an identification made by a person who saw footage from a surveillance video replayed on television. Officers searched Hamlett's car and discovered a check stub matching the check used in one of the robberies in Atlanta. When questioned, Hamlett did not confess, but he stated that he knew and had worked for

3

Hunter.  Schoeppner obtained Hamlett's photograph and determined that he looked similar to the robber and could not be eliminated as a suspect.

Schoeppner created a second photographic array containing Hamlett's photograph.  Schoeppner showed the second array to the teller who had been robbed at Emory, and the teller "tentatively" identified someone other than Hamlett.  Schoeppner next showed the teller the array containing Hunter's photograph, and the teller positively identified Hunter as the robber.  Later, Schoeppner showed the second array to the three employees who had viewed the first array.  The employee of Emory "tentatively" identified Hamlett as the robber, and the two employees of BB&T "tentatively" identified someone other than Hamlett.

Schoeppner conferred with a sergeant in his department and they decided to arrest Hunter.  The sergeant and Schoeppner thought the evidence was more compelling than when Schoeppner obtained the arrest warrants because of the two "tentative" identifications of Hunter from employees of Emory and BB&T and the positive identification made by the teller at Emory.  Hunter was arrested and charged for the robberies of Emory and BB&T, but later those charges were dismissed.

## II. STANDARD OF REVIEW

We review <u>de novo</u> a summary judgment and view the evidence in the light most favorable to the nonmoving party. <u>Carter v. City of Melbourne, Fla.</u>, 731 F.3d 1161, 1166 (11th Cir. 2013). Summary judgment should be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## III. DISCUSSION

Hunter challenges the summary judgment in favor of Schoeppner on two grounds. First, Hunter argues that Schoeppner lacked probable cause to obtain the arrest warrants. Second, Hunter argues that Schoeppner lacked probable cause after officers in Atlanta arrested Hamlett.

The district court did not err by entering summary judgment in favor of Schoeppner. Schoeppner had probable cause to obtain warrants for Hunter's arrest, which barred Hunter's complaint for malicious prosecution. <u>See</u> <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1256 (11th Cir. 2010). The demand note left at one of the robberies was written on a check issued to Hunter's business; Hunter resembled the robber depicted in the surveillance videotapes; and witnesses at Emory and BB&T identified Hunter, albeit "tentatively," as robbing those institutions. Hunter argues that the magistrate judge who issued the arrest warrants lacked probable cause because Schoeppner's affidavit consisted of conclusory

5

assertions of Hunter's guilt, but the "other sworn or affirmed testimony" presented to the magistrate judge established probable cause to issue the warrants. See United States v. Hill, 500 F.2d 315, 320–21 (5th Cir. 1974) ("[A]n affiant's oral testimony, extrinsic to the written affidavit, which is sworn before the issuing magistrate [judge], [can be used] in determining whether the warrant was founded on probable cause."). Schoeppner also relied on reasonably trustworthy information to execute the arrest warrants. "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information, and must be judged not with clinical detachment but with a common sense view to the realities of normal life." Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990) (internal quotation marks and citations omitted).

Hunter argues that Schoeppner ignored evidence suggesting that Hamlett committed the robberies, but we disagree. After Hamlett's arrest, Schoeppner had witnesses view additional photographic arrays containing Hamlett and Hunter, and the teller robbed at Emory positively identified Hunter as the robber. Hunter argues that similarities in the robberies in Atlanta and DeKalb County and evidence found in Hamlett's possession suggested that he robbed all the banks, but Schoeppner reasonably concluded based on the "facts and circumstances within [his] knowledge," id. at 1506, and in the absence of any evidence tying Hamlett directly to the robberies in DeKalb County, that Hunter committed those robberies.

6

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Schoeppner.