[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10731

Non-Argument Calendar

_____

ORRILYN MAXWELL STALLWORTH,

Plaintiff-Appellant,

*versus*

RODNEY W. HURST,
in his personal and official capacities (dismissed 10/8/2019)
as Chilton County Sheriff's Deputy,

Defendant-Appellee,

KENNETH HARMON,
in his personal and official capacities as Chilton County

2                    Opinion of the Court                    21-10731

Sheriff's Deputy, et al.,

                                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 2:18-cv-01005-RAH-SRW

_____

Before ROSENBAUM, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Orillyn Stallworth sued Rodney Hurst under 42 U.S.C. § 1983 for violating her Fourth Amendment right to be free from unreasonable searches and seizures. She contended that Hurst arrested her and charged her with driving under the influence without probable cause. Hurst filed a motion for summary judgment, which the district court granted, holding that Hurst was protected by qualified immunity. On Stallworth's appeal, we must determine whether the district court erred in granting summary judgment for Hurst based on qualified immunity. For the following reasons, we affirm.

I

Stallworth was driving from Daleville to Birmingham, Alabama in a newly purchased car. Shortly after 10:00 p.m., she stopped at a gas station located off the interstate and took a nap in her vehicle. Hurst, who was on patrol duty at the time, arrived at the same gas station around 11:00 p.m. to conduct a routine business check and noticed Stallworth's parked automobile running with the lights on.

Stallworth eventually resumed her drive, and as she drove away from the gas station, Hurst noticed that her car had a dealership drive-off tag rather than a government-issued license plate. Soon after, Hurst, too, resumed driving on the highway. While on the highway, Hurst observed Stallworth driving erratically, including changing lanes without signaling and swerving in her lane.[1]

Hurst pulled Stallworth over and inquired how she was doing and whether she had consumed any alcohol. Stallworth replied that she hadn't and that she was just "a little tired." Doc. 53-1 (Vid.

---

[1] Stallworth says she was simply trying to activate her car's audio system and that she was driving under the speed limit. On appeal, Stallworth asserts that, by testifying that she was driving under the speed limit, she created a genuine issue of material fact regarding whether she "committed any driving errors that would have constituted a violation of law." But driving under the speed limit and driving erratically aren't mutually exclusive, and Stallworth never contested Hurst's testimony that she drove erratically. If anything, Stallworth's testimony about pushing buttons on her car's audio system explains her driving infractions.

23:57:05-23:57:12). She further insisted that she didn't drink or do drugs. While Hurst checked Stallworth's license in his computer, Hurst organized some of the belongings in her car. Upon returning and noticing an open bottle of liquid on the car's floorboard, Hurst asked Stallworth what it was, to which she replied that it was tea. As they conversed, Hurst observed that Stallworth's speech was slurred, her eyes were "glossy," and she was slow to react to his questions.

Hurst, and another officer, whom Hurst had called for backup, asked Stallworth to exit her car so that they could perform field sobriety tests. Based on those tests, Hurst concluded that probable cause existed that Stallworth had been driving "under the influence." Hurst asked whether Stallworth had anyone who could pick her up or whether she would be willing to go to the hospital to get checked out. When she answered both questions in the negative, Hurst arrested her for driving under the influence.

At the county jail, Stallworth was administered a test to determine whether she had alcohol in her system. The results came back negative. Regardless, Hurst charged Stallworth with driving under the influence of an unknown substance pursuant to Ala. Code § 32-5A-191(a)(5). When Stallworth appeared for trial, Hurst recommended dismissal of the case on the condition that Stallworth submit to and pass a drug test. Stallworth took and passed the drug test, and the charges were voluntarily dismissed with prejudice. Stallworth then sued Hurst for violating her Fourth Amendment rights.

## II

Based on the above facts, we must determine whether Hurst was entitled to summary judgment with regard to Stallworth's false-arrest, false-imprisonment, and malicious-prosecution claims based on qualified immunity.[2]

> To obtain qualified immunity, an official such as a police officer must first show he was act[ing] within his discretionary authority. Once an official establishes that his activities were within that scope, the plaintiff must demonstrate (1) that the facts show that the official violated the plaintiff's constitutional rights and (2) that the law clearly established those rights at the time of the alleged misconduct. We may address those two inquiries in either order.

*Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352–53 (11th Cir. 2015) (citations and quotations omitted).

We start with the false-arrest claim. When police officers conduct a warrantless arrest without probable cause, they violate the Fourth Amendment and therefore open themselves to suit under 42 U.S.C. § 1983 for damages. *See Case v. Eslinger*, 555 F.3d

---

[2] "We review *de novo* a grant of summary judgment on the basis of qualified immunity, drawing all inferences and viewing all evidence in the light most favorable to the nonmoving party." *Mobley v. Palm Beach Ctny. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015).

1317, 1326 (11th Cir. 2009); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). But probable cause is an "absolute bar to a section 1983 action for false arrest." *Case*, 555 F. 3d at 1326–27. And, in the Fourth Amendment context, an officer need only have "arguable" probable cause to claim qualified immunity. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003).

"Probable cause exists when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002)). And arguable probable cause exists "where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest' the plaintiffs." *Id.* at 978 (quotations omitted). The existence of probable cause or arguable probable cause "depends on the elements of the alleged crime and the operative fact pattern." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018) (citation omitted). If Hurst had probable cause— or even arguable probable cause—then he gets the benefit of qualified immunity.

At the very least, Hurst had arguable probable cause to arrest Stallworth for driving under the influence in violation of Ala. Code § 32-5A-191(a)(5). In relevant part, that section states that "[a] person shall not drive or be in actual physical control of any vehicle

while: . . . Under the influence of any substance which impairs the mental or physical faculties of such person to a degree which renders him or her incapable of safely driving." Ala. Code § 32-5A-191(a)(5). Here, by the time he arrested her, Hurst had observed Stallworth's erratic driving, Stallworth's "glossy" eyes and slurred speech, and Stallworth's deficient performance when completing field sobriety tests. Based on these observations, a reasonable officer in the same situation and with the same knowledge "could have believed that probable cause existed to arrest" Stallworth for driving under the influence of an impairing substance. *Wilkerson*, 736 F.3d at 978. Thus, Hurst is entitled to summary judgment on the false-arrest claim.

Next, false imprisonment. "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). "A false imprisonment claim under § 1983 requires meeting the common law elements of false imprisonment and establishing that the imprisonment was a due process violation under the Fourteenth Amendment." *Helm v. Rainbow City*, 989 F.3d 1265, 1278 (11th Cir. 2021).

> [I]n order to establish a due process violation, a plaintiff must show that the officer acted with deliberate indifference, i.e., demonstrating that the officer had subjective knowledge of a risk of serious harm and disregarded that risk by actions beyond mere

negligence. *If an officer has arguable probable cause to seize an individual, that finding may defeat a claim of deliberate indifference.*

*Id.* at 1278–79 (quotations removed and emphasis added).

As already explained, Hurst had at least arguable probable cause to arrest Stallworth based on his observations. Accordingly, Hurst is not liable for the initial detention. Stallworth contends, however, that Hurst violated her due process rights when he continued to detain her even after determining that she didn't have alcohol in her system. But Hurst could have reasonably believed that Stallworth was under the influence of some other substance. Thus, Hurst still had arguable probable cause for Stallworth's arrest, and he is entitled to summary judgment on this claim as well.

Lastly, Stallworth contends that Hurst violated her Fourth Amendment rights through malicious prosecution. "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution." *Wood*, 323 F.3d at 881 (emphasis removed). "Under the common-law elements of malicious prosecution, [Stallworth] must prove that the officers instituted or continued a criminal prosecution against [her], with malice and without probable cause, that terminated in [her] favor and caused damage to [her]." *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) (quotations omitted). We have previously held that a "plaintiff's arrest cannot serve as the predicate deprivation of

liberty because it occurred prior to the time of arraignment, and was not one that arose from malicious prosecution as opposed to false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004) (quotations omitted).

Without reaching the "clearly established" prong of the qualified-immunity analysis, the district court held that Stallworth failed to show a violation of her Fourth Amendment right because, as a matter of law, Stallworth was required to show that some deprivation of liberty occurred *after* her arraignment. Before us, Stallworth contends that the district court erred in granting summary judgment on that ground because Hurst never presented it as a basis for summary judgment and the court shouldn't have raised it sua sponte without giving her a chance to respond. Even so, "[w]hen reviewing a grant of summary judgment, we may affirm on any adequate ground" that the record supports and that an appellee puts properly before us, "regardless of whether the district court relied on that ground." *McCabe v. Sharrett*, 12 F.3d 1558, 1560 (11th Cir. 1994).

Here, the merits of Stallworth's malicious-prosecution claim aside, Hurst is entitled to qualified immunity because, as he explains, his actions did not violate clearly established law. Hurst raised qualified immunity as a defense to his claims both at the district court and on appeal. To establish a violation of clearly established law, Stallworth had to show one of three things: "'(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the

Constitution, statute, or case law that clearly establishes a constitu-tional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.'" *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citation omitted).

Stallworth has not met her burden. Although Stallworth ar-gues that Hurst violated her "clearly established rights," she has not presented a case with materially similar facts,[3] demonstrated that a broad statement of constitutional law clearly established a consti-tutional right, or shown conduct so egregious that her rights were clearly violated. Instead, her discussion of malicious prosecution focuses exclusively on the district court's alleged error in deciding the case on a ground not argued by Hurst. But because Hurst has argued qualified immunity as an alternative basis for affirmance, Stallworth was required to meet her burden regardless of whether the district court might have erred on some other ground.

---

[3] To be sure, Stallworth cited a malicious-prosecution case in her brief, *Wil-liams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), but she never contended that it contains sufficiently similar facts to put Hurst on notice. With good rea-son—the facts in *Williams* are significantly different from those in this case. In *Williams*, the Court held that officers were not entitled to qualified immunity on a malicious-prosecution claim after the officers arrested and charged a de-fendant based on a defective warrant. *Id.* at 1169 ("Notwithstanding the ambi-guity in our standard of malicious prosecution, Williams had a clearly estab-lished right to be free from a seizure based on intentional and material mis-statements in a warrant application."). By contrast, Hurst arrested Stallworth based on an on-the-spot probable-cause determination.

Stallworth failed to demonstrate a violation of clearly established law, so Hurst is entitled to qualified immunity.

★ ★ ★

Because Hurst is entitled to qualified immunity on each of Stallworth's claims, we **AFFIRM**.